# EXHIBIT 13



# Temporary Protected Status: Overview and Current Issues

Updated February 26, 2020

**Congressional Research Service**

https://crsreports.congress.gov

RS20844

**CRS REPORT**
Prepared for Members and
Committees of Congress

**Congressional Research Service**
Informing the legislative debate since 1914

**SUMMARY**

RS20844

February 26, 2020

**Jill H. Wilson**
Analyst in Immigration
Policy

# Temporary Protected Status: Overview and Current Issues

When civil unrest, violence, or natural disasters erupt in countries around the world, concerns arise over the ability of foreign nationals in the United States from those countries to safely return. Provisions exist in the Immigration and Nationality Act (INA) to offer temporary protected status (TPS) and other forms of relief from removal under specified circumstances. The Secretary of Homeland Security has the discretion to designate a country for TPS for periods of 6 to 18 months and can extend these periods if the country continues to meet the conditions for designation. Congress has also provided TPS legislatively. A foreign national who is granted TPS receives a registration document and employment authorization for the duration of the TPS designation.

The United States currently provides TPS to approximately 411,000 foreign nationals from 10 countries: El Salvador, Haiti, Honduras, Nepal, Nicaragua, Somalia, South Sudan, Sudan, Syria, and Yemen. Certain Liberians maintain relief under a similar administrative mechanism known as Deferred Enforced Departure (DED), which is due to expire on March 30, 2020. Since September 2017, the Secretary of Homeland Security has announced the termination of TPS for six countries—El Salvador, Haiti, Honduras, Nepal, Nicaragua, and Sudan—and extensions of TPS for Somalia, South Sudan, Syria, and Yemen. Several lawsuits have been filed challenging the TPS termination decisions.

There is ongoing debate about whether foreign nationals who have been living in the United States for long periods of time with TPS or DED should have a pathway to lawful permanent resident (LPR) status. Various proposals related to TPS have been introduced in the 116th Congress, including to expand the program to additional countries (e.g., Venezuela or the Bahamas), provide a pathway to LPR status, or prohibit gang members or those without lawful status from receiving TPS. A provision to allow Liberians who have been continuously present in the United States since 2014 and their family members to apply for LPR status was enacted in December 2019 as part of the FY2020 National Defense Authorization Act.

# Contents

Background ........................................................................................................................... 1

Humanitarian Response ........................................................................................................ 1

Temporary Protected Status ................................................................................................. 2

Deferred Enforced Departure ............................................................................................... 3

Historical Use of Blanket Relief .......................................................................................... 4

Countries Designated for TPS and DED .............................................................................. 5

    Central America ............................................................................................................ 6

    Haiti .............................................................................................................................. 7

    Liberia .......................................................................................................................... 9

    Nepal .......................................................................................................................... 10

    Somalia ....................................................................................................................... 11

    Sudan and South Sudan ............................................................................................... 11

    Syria ........................................................................................................................... 12

    Yemen ......................................................................................................................... 12

State of Residence of TPS Recipients ................................................................................ 13

Adjustment of Status ......................................................................................................... 14

Selected Legislative Activity in the 116th Congress ......................................................... 15

## Figures

Figure 1. Individuals with Temporary Protected Status by State of Residence ............................. 14

## Tables

Table 1. TPS Beneficiaries by Country of Citizenship ...................................................................... 5

Table A-1. Individuals with Temporary Protected Status by State of Residence .......................... 16

## Appendixes

Appendix. ........................................................................................................................... 16

## Contacts

Author Information ............................................................................................................. 17

# Background

Federal law provides that all aliens[1] attempting to enter the United States must do so pursuant to the Immigration and Nationality Act (INA). The INA allows for the admission of (1) immigrants, who are admitted to the United States permanently, and (2) nonimmigrants, who are admitted for temporary durations and specific purposes (e.g., students, tourists, temporary workers, or business travelers). Foreign nationals who lack lawful immigration status generally fall into three categories: (1) those who are admitted legally and then overstay their nonimmigrant visas, (2) those who enter the country surreptitiously without inspection, and (3) those who are admitted on the basis of fraudulent documents. In all three instances, the aliens are in the United States in violation of the INA and subject to removal.

The executive branch has discretion to grant temporary reprieves from removal to aliens present in the United States in violation of the INA.[2] Temporary Protected Status (TPS), codified in INA Section 244,[3] provides temporary relief from removal and work authorization to foreign nationals—regardless of their immigration status—in the United States from countries experiencing armed conflict, natural disaster, or other extraordinary circumstances that prevent their safe return. This report begins by situating TPS in the context of humanitarian responses to migration. Another form of blanket relief[4] from removal—Deferred Enforced Departure (DED)—is also described, as is the historical use of these relief mechanisms. This report then provides data on the countries currently designated for TPS, including the conditions that have contributed to their designation. Past legislation to provide lawful permanent resident (LPR) status to certain TPS-designated foreign nationals is also described. The report concludes with a discussion of legislative activity in the 116th Congress related to TPS.

# Humanitarian Response

As a State Party to the 1967 United Nations Protocol Relating to the Status of Refugees (U.N. Protocol),[5] the United States agrees to the principle of *nonrefoulement*, which asserts that a refugee should not be returned to a country where he or she faces serious threats to his or her life or freedom on account of race, religion, nationality, membership in a particular social group, or political opinion. (This is now considered a rule of customary international law.) *Nonrefoulement* is embodied in several provisions of U.S. immigration law. Most notably, it is reflected in INA

---

[1] *Alien* is the term used in law and is defined as anyone who is not a citizen or national of the United States. A U.S. *national* is a person owing permanent allegiance to the United States and includes citizens. Noncitizen nationals are individuals who were born either in American Samoa or on Swains Island to parents who are not citizens of the United States. In this report, the terms *alien* and *foreign national* are used interchangeably.

[2] For more information, see CRS Report R45158, *An Overview of Discretionary Reprieves from Removal: Deferred Action, DACA, TPS, and Others*.

[3] 8 U.S.C. §1254a.

[4] The term *blanket relief* in this report refers to relief from removal that is administered to a group of individuals based on their ties to a foreign country; this stands in contrast to asylum, which is a form of relief administered on a case-by-case basis to individuals based on their personal circumstances.

[5] The 1951 United Nations Convention Relating to the Status of Refugees, which was amended by its 1967 Protocol, defines who is a refugee and sets out the legal, social, and other kinds of protections that refugees and those seeking asylum are entitled to receive. It also states the responsibilities of nations that grant asylum. United Nations High Commission for Refugees, *Convention Relating to the Status of Refugees and Its 1967 Protocol*, Geneva, Switzerland, http://www.unhcr.org/en-us/about-us/background/4ec262df9/1951-convention-relating-status-refugees-its-1967-protocol.html.

provisions requiring the government to withhold the removal of a foreign national to a country in which his or her life or freedom would be threatened on the basis of race, religion, nationality, membership in a particular social group, or political opinion.[6]

The legal definition of a refugee in the INA, which is consistent with the U.N. Protocol, specifies that a refugee is a person who is unwilling or unable to return to his/her country of nationality or habitual residence because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.[7] This definition also applies to individuals seeking asylum. Under the INA, refugees and asylees differ on the physical location of the persons seeking the status: those abroad apply for refugee status while those in the United States or at a U.S. port of entry apply for asylum.[8] Those admitted as refugees or granted asylum can apply for LPR status after one year.

Other foreign nationals in the United States who may elicit a humanitarian response may not qualify for asylum; under certain circumstances these persons may be eligible for relief from removal through TPS or DED.

# Temporary Protected Status

TPS is a blanket form of humanitarian relief. It is the statutory embodiment of safe haven for foreign nationals within the United States who may not qualify for asylum but are nonetheless fleeing—or reluctant to return to—potentially dangerous situations. TPS was established by Congress as part of the Immigration Act of 1990 (P.L. 101-649). The statute gives the Secretary of the Department of Homeland Security (DHS),[9] in consultation with other government agencies (most notably the Department of State), the authority to designate a country for TPS under one or more of the following conditions: (1) ongoing armed conflict in a foreign state that poses a serious threat to personal safety; (2) a foreign state request for TPS because it temporarily cannot handle the return of its nationals due to an environmental disaster; or (3) extraordinary and temporary conditions in a foreign state that prevent its nationals from safely returning. A foreign state may not be designated for TPS if the Secretary of DHS finds that allowing its nationals to temporarily stay in the United States is against the U.S. national interest.[10]

The Secretary of DHS can designate a country for TPS for periods of 6 to 18 months and can extend these periods if the country continues to meet the conditions for designation.[11] Each designation specifies the date by which individuals must have continuously resided in the United States in order to qualify. If a designation is extended, the arrival date may be moved forward in order to allow those who arrived later to qualify, an action referred to as *redesignation*.[12] To

---

[6] Section 208 of INA (8 U.S.C. §1158); Section 241(b)(3) of INA (8 U.S.C. §1231(b)(3)); and Section 101(a)(42) of INA (8 U.S.C. §1101(a)(42)).]

[7] Section 101(a)(42) of INA (8 U.S.C. §1101(a)(42).

[8] See CRS Report R45539, *Immigration: U.S. Asylum Policy*; and CRS Report RL31269, *Refugee Admissions and Resettlement Policy*.

[9] When TPS was enacted in 1990, most immigration-related functions, including designating countries for TPS, fell under the authority of the Attorney General. With the creation of the Department of Homeland Security in 2002 (P.L. 107-296), most of the Attorney General's immigration-related authority transferred to the Secretary of DHS as of March 1, 2003.

[10] Section 244(b)(1) of INA (8 U.S.C. §1254a(b)(1)).

[11] There is no limit on the number of extensions a country can receive.

[12] Redesignation is not defined in law; it also refers to cases in which a country is designated for TPS for a different or additional reason than previously designated (e.g., initially designated on account of armed conflict, and subsequently

obtain TPS, eligible foreign nationals within the United States must pay specified fees[13] and submit an application to DHS's U.S. Citizenship and Immigration Services (USCIS) before the deadline set forth in the *Federal Register* notice announcing the TPS designation. The application must include supporting documentation as evidence of eligibility (e.g., a passport issued by the designated country and records showing continuous physical presence in the United States since the date established in the TPS designation).[14] The statute specifies *grounds of inadmissibility* that cannot be waived, including those relating to criminal convictions, drug offenses, terrorist activity, and the persecution of others.[15]

Individuals granted TPS are eligible for employment authorization, cannot be detained on the basis of their immigration status, and are not subject to removal while they retain TPS.[16] They may be deemed ineligible for public assistance by a state and may travel abroad with the prior consent of the DHS Secretary.[17] TPS does not provide a path to lawful permanent residence or citizenship, but a TPS recipient is not barred from acquiring nonimmigrant or immigrant status if he or she meets the requirements.[18] DHS has indicated that information it collects when an individual registers for TPS may be used to enforce immigration law or in any criminal proceeding.[19] In addition, withdrawal of an alien's TPS may subject the alien to exclusion or deportation proceedings.[20]

# Deferred Enforced Departure

In addition to TPS, there is another form of blanket relief from removal known as deferred enforced departure (DED),[21] formerly known as extended voluntary departure (EVD).[22] DED is a temporary, discretionary, administrative stay of removal granted to aliens from designated countries. Unlike TPS, a DED designation emanates from the President's constitutional powers to conduct foreign relations and has no statutory basis. DED was first used in 1990 and has been

---

designated on account of a natural disaster).

[13] Fees for initial applicants include a $50 application fee (may not exceed $50 per 9 U.S.C. §1254a (c)(1)(B)), a $410 filing fee for employment authorization (if applying for employment authorization and between the ages of 14 and 65), and an $85 biometrics services fee for those age 14 and over. Applicants may request a waiver of the application and biometrics fees per 8 C.F.R. 103.7(c). Re-registration does not require the $50 application fee, but the other fees apply.

[14] See 8 C.F.R.§244.9 for details on evidence that must be submitted.

[15] Section 212 of the INA specifies broad grounds on which foreign nationals are considered ineligible to receive visas and ineligible to be admitted to the United States. Section 244(c)(2) in the TPS statute lists which of these *grounds of inadmissibility* may be waived and which may not be waived.

[16] INA §244(a)(1)(A), (a)(1)(B), (d)(4) (8 USC §1254a (a)(1)(A), (a)(1)(B), (d)(4))

[17] INA §244(f) (8 USC §1254a(f))

[18] For purposes of adjustment to lawful permanent resident status or a change to a nonimmigrant status, an alien granted TPS is considered as being in and maintaining "lawful status as a nonimmigrant" during the period in which the alien is granted TPS. INA §244(f)(4).

[19] 8 C.F.R. §244.16.

[20] 8 C.F.R. §244.14.

[21] DED is not to be confused with deferred action, which the Department of Homeland Security defines as "a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion." For more information, see CRS Report R45158, *An Overview of Discretionary Reprieves from Removal: Deferred Action, DACA, TPS, and Others* and CRS Report R45995, *Unauthorized Childhood Arrivals, DACA, and Related Legislation*.

[22] EVD status, which was used from 1960 to 1990, was given to nationals of Iran, Lebanon, Nicaragua, Poland, and Uganda. Other countries whose nationals have benefitted in the past from a status similar to EVD include Cambodia, Chile, Cuba, Czechoslovakia, Dominican Republic, Hungary, Laos, Romania, and Vietnam.

used a total of five times (see "Historical Use of Blanket Relief"). Liberia is the only country currently designated for DED, and that designation is scheduled to end on March 30, 2020.[23]

DED and EVD have been used on country-specific bases to provide relief from removal at the President's discretion, usually in response to war, civil unrest, or natural disasters.[24] When Presidents grant DED through an executive order or presidential memorandum, they generally provide eligibility guidelines, such as demonstration of continuous presence in the United States since a specific date. Unlike TPS, the Secretary of State does not need to be consulted when DED is granted. In contrast to recipients of TPS, individuals who benefit from DED are not required to register for the status with USCIS unless they are applying for work authorization.[25] Instead, DED is triggered when a protected individual is identified for removal.

# Historical Use of Blanket Relief

In 1990, when Congress enacted the TPS statute, it also granted TPS for 18 months to Salvadoran nationals who were residing in the United States. Since then, the Attorney General (and later, the Secretary of DHS), in consultation with the Secretary of State, granted and subsequently terminated TPS for foreign nationals in the United States from the following countries: Angola, Bosnia-Herzegovina, Burundi, Guinea, Guinea-Bissau, the Kosovo Province of Serbia, Kuwait, Lebanon, Liberia, Montserrat, Rwanda, and Sierra Leone.[26]

Rather than extending the initial Salvadoran TPS when it expired in 1992, President George H. W. Bush granted DED to an estimated 190,000 Salvadorans through December 1994. President Bush also granted DED to about 80,000 Chinese nationals in the United States following the Tiananmen Square massacre in June 1989, and these individuals retained DED status through January 1994. From 1991 to 1996, DED was also granted to about 2,200 Persian Gulf evacuees who were airlifted to the United States after the 1990 invasion of Kuwait. In December 1997, President Clinton instructed the Attorney General to grant DED for one year to Haitian nationals in the United States, providing time for the Administration to work with Congress on long-term legislative relief for Haitians.[27] President George W. Bush directed that DED be provided to

---

[23] The White House (President Trump), "Presidential Memorandum on Extension of Deferred Enforced Departure for Liberians," March 28, 2019, https://www.whitehouse.gov/presidential-actions/memorandum-extension-deferred-enforced-departure-liberians/.

[24] For example, see Executive Order 12711, "Policy Implementation With Respect to Nationals of the People's Republic of China," *Public Papers of the Presidents of the United States: George Bush XLI, President of the United States: 1989-1993* (Washington: GPO, 1990); The White House (President Obama), "Presidential Memorandum— Deferred Enforced Departure for Liberians," Memorandum for the Secretary of Homeland Security, September 28, 2016, https://www.whitehouse.gov/the-press-office/2016/09/28/presidential-memorandum-deferred-enforced-departure-liberians.

[25] In general, the President directs executive agencies to implement procedures to provide DED and related benefits, such as employment authorization. See, for example, U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, *Temporary Protected Status (TPS) and Deferred Enforced Departure (DED)*, https://www.uscis.gov/sites/default/files/USCIS/About%20Us/Electronic%20Reading%20Room/Customer%20Service%20Reference%20Guide/TempProtectedStatus.pdf.

[26] For current and historical information on TPS designations by country and links to *Federal Register* announcements, see U.S. Department of Justice, Executive Office for Immigration Review, *Temporary Protected Status*, https://www.justice.gov/eoir/temporary-protected-status.

[27] The Nicaraguan Adjustment and Central American Relief Act (NACARA) (Title II of P.L. 105-100) was enacted in 1997 and provided eligibility for LPR status to certain Nicaraguans, Cubans, Guatemalans, Salvadorans, and nationals of the former Soviet bloc. President Clinton, among others, argued that Haitians deserved similar statutory treatment. The Haitian Refugee Immigration Fairness Act (HRIFA) (P.L. 105-277) was enacted in 1998, allowing certain Haitian nationals who were in the United States before December 31, 1995 to adjust to LPR status. For more information, see

Liberian nationals whose TPS was expiring in September 2007; Liberian DED was extended several times by President Obama.[28] President Trump has terminated DED for Liberians, with an effective date of March 30, 2020 (for more details, see "Liberia").[29]

# Countries Designated for TPS and DED

Approximately 411,000 foreign nationals from the following 10 countries have TPS: El Salvador, Haiti, Honduras, Nepal, Nicaragua, Somalia, South Sudan, Sudan, Syria, and Yemen. In addition, certain Liberian nationals are covered by a designation of DED (see "Liberia" below). The Trump Administration has announced terminations of temporary protections for seven of these countries (six with TPS and one with DED). Several lawsuits have been filed challenging these decisions.

**Table 1** lists the current TPS-designated countries, the most recent decision—to extend or terminate—by the Secretary of DHS, the date from which individuals are required to have continuously resided in the United States, and the designation's expiration date. In addition, **Table 1** shows the number of individuals with TPS as of November 7, 2019.

**Table 1. TPS Beneficiaries by Country of Citizenship**

| Country | Most Recent Decision | Required Arrival Date[a] | Expiration Date[b] | Individuals with TPS[c] |
|---|---|---|---|---|
| El Salvador | Termination* | February 13, 2001 | September 9, 2019 | 247,697 |
| Haiti | Termination* | January 12, 2011 | July 22, 2019 | 55,338 |
| Honduras | Termination* | December 30, 1998 | January 5, 2020 | 79,415 |
| Nepal | Termination* | June 24, 2015 | June 24, 2019 | 14,550 |
| Nicaragua | Termination* | December 30, 1998 | January 5, 2019 | 4,421 |
| Somalia | Extension | May 1, 2012 | September 17, 2021 | 455 |
| South Sudan | Extension | January 25, 2016 | November 2, 2020 | 96 |
| Sudan | Termination* | January 9, 2013 | November 2, 2018 | 774 |
| Syria | Extension | August 1, 2016 | March 31, 2021 | 6,934 |
| Yemen | Extension | January 4, 2017 | September 3, 2021 | 1,646 |
| **Total** | | | | **411,326** |

**Source:** CRS compilation of information from *Federal Register* announcements and data provided to CRS by USCIS.

**Note**: *As of the date of this report, termination is on hold due to court order.

a.  The arrival date represents the date from which individuals are required to have continuously resided in the United States in order to qualify for TPS and is indicated in the most recent TPS designation for that country. A foreign national is not considered to have failed this requirement for a "brief, casual, and innocent" absence. 8 U.S.C. §1254a(c) and 8 C.F.R. §244.1.

---

archived CRS Report RS21349, *U.S. Immigration Policy on Haitian Migrants.*

[28] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "DED Granted Country - Liberia," https://www.uscis.gov/humanitarian/deferred-enforced-departure/ded-granted-country-liberia/ded-granted-country-liberia.

[29] The White House (President Trump), "Presidential Memorandum on Extension of Deferred Enforced Departure for Liberians," March 28, 2019, https://www.whitehouse.gov/presidential-actions/memorandum-extension-deferred-enforced-departure-liberians/.

b.  The expiration date represents the end of the most recent designation period and is subject to change based on future decisions of the Secretary of DHS.

c.  Data provided to CRS by USCIS. These data reflect individuals with an approved TPS application as of November 7, 2019; the data include some individuals who have since adjusted to another status (excluding those who became U.S. citizens), may include individuals who have left the country or died, and do not necessarily include all nationals from the specified countries who are in the United States and are eligible for the status.

## Central America

The only time Congress has granted TPS was in 1990 (as part of the law establishing TPS) to eligible Salvadoran nationals in the United States.[30] In the aftermath of Hurricane Mitch in November 1998, Attorney General Janet Reno announced that she would temporarily suspend the deportation of nationals from El Salvador, Guatemala, Honduras, and Nicaragua. On January 5, 1999, the Attorney General designated Honduras and Nicaragua for TPS due to "severe flooding and associated damage" and "substantial disruption of living conditions" caused by Hurricane Mitch.[31] Prior to leaving office in January 2001, President Clinton said that his Administration would temporarily halt deportations to El Salvador because of a major earthquake. In 2001, the George W. Bush Administration granted TPS to Salvadoran nationals following two earthquakes that rocked the country.[32]

Over the years, the George W. Bush Administration and the Obama Administration extended TPS for Central Americans from El Salvador, Honduras, and Nicaragua on the rationale that it was still unsafe for their nationals to return due to the disruption of living conditions from environmental disasters.

Beginning in late 2017, the Trump Administration announced decisions to terminate TPS for Nicaragua and El Salvador and to put on hold a decision about Honduras. In November 2017, DHS announced that TPS for Nicaragua would end on January 5, 2019—12 months after its last designation would have expired—due to "recovery efforts relating to Hurricane Mitch [that] have largely been completed."[33] On the same day, DHS announced that more information was necessary to make a determination about TPS for Honduras; as a result, statute dictates that its status be extended for six months.[34] On January 8, 2018, DHS announced its decision to terminate TPS for El Salvador—whose nationals account for about 60% of all current TPS recipients—after an 18-month transition period. El Salvador's TPS designation was scheduled to end on September

---

[30] For historical analysis, see archived CRS Report IB87205, *Immigration Status of Salvadorans and Nicaraguans* (available to congressional clients upon request).

[31] U.S. Department of Justice, Immigration and Naturalization Service, "The Designation of Honduras Under Temporary Protected Status," 64 *Federal Register* 524-526, January 5, 1999; U.S. Department of Justice, Immigration and Naturalization Service, "The Designation of Nicaragua Under Temporary Protected Status," 64 *Federal Register* 526-528, January 5, 1999.

[32] U.S. Department of Justice Immigration and Naturalization Service, "The Designation of El Salvador Under Temporary Protected Status," 66 *Federal Register* 14214-14216, March 9, 2001.

[33] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Termination of the Designation of Nicaragua for Temporary Protected Status," 82 *Federal Register* 59636-59642, December 15, 2017.

[34] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Extension of the Designation of Honduras for Temporary Protected Status," 82 *Federal Register* 59630-59636, December 15, 2017.

9, 2019,[35] but the termination remains on hold as the result of a court order.[36] DHS announced in October 2019—as part of agreements with El Salvador related to information sharing and security—that it would extend the validity of work permits through January 4, 2021, for Salvadorans with TPS. The announcement also stated that Salvadorans with TPS would have "an additional 365 days after the conclusion of the TPS-related lawsuits to repatriate back to their home country."[37] These actions do not equate to a TPS extension, as defined in statute.[38] On May 4, 2018, DHS announced its decision to terminate the TPS designation for Honduras, with an 18-month delay (until January 5, 2020) to allow for an orderly transition.[39] This termination is also on hold as the result of a court order.[40]

The large number of Central Americans with TPS, along with their length of U.S. residence and resulting substantial economic and family ties, have led some to support extending TPS—or providing LPR status—for Central Americans and Salvadorans in particular. Supporters have argued that ongoing violence and political unrest have left these countries unable to adequately handle the return of their nationals and that a large-scale return could have negative consequences for the U.S. economy and labor supply, American families, foreign relations, and the flow of remittances sent by Central Americans living in the United States to their relatives in Central America.[41] Opponents have argued that ending the TPS designations for these countries is consistent with its original intent—to provide *temporary* safe haven.

## Haiti

The devastation caused by the January 12, 2010, earthquake in Haiti prompted calls for the Obama Administration to grant TPS to Haitian nationals in the United States.[42] The scale of the humanitarian crisis after the earthquake—with estimates of thousands of Haitians dead and reports of the total collapse of Port au Prince's infrastructure—led DHS to grant TPS for 18 months to Haitian nationals who were in the United States as of January 12, 2010.[43] At the time,

---

[35] U.S. Department of Homeland Security, "Secretary of Homeland Security Kirstjen M. Nielsen Announcement on Temporary Protected Status for El Salvador," press release, January 8, 2018, https://www.dhs.gov/news/2018/01/08/secretary-homeland-security-kirstjen-m-nielsen-announcement-temporary-protected.

[36] For more information on litigation related to TPS terminations, see CRS Legal Sidebar LSB10215, *Federal District Court Enjoins the Department of Homeland Security from Terminating Temporary Protected Status*.

[37] U.S. Department of Homeland Security, "U.S. and El Salvador Sign Arrangements on Security and Information Sharing; Give Salvadorans with TPS More Time," press release, October 28, 2019, https://www.dhs.gov/news/2019/10/28/us-and-el-salvador-sign-arrangements-security-information-sharing-give-salvadorans.

[38] See INA §244(b)(3) (8 U.S.C. §1254a(b)(3)).

[39] U.S. Department of Homeland Security, "Secretary of Homeland Security Kirstjen M. Nielsen Announcement on Temporary Protected Status for Honduras," press release, May 4, 2018, https://www.dhs.gov/news/2018/05/04/secretary-homeland-security-kirstjen-m-nielsen-announcement-temporary-protected

[40] For more information on litigation related to TPS terminations, see CRS Legal Sidebar LSB10215, *Federal District Court Enjoins the Department of Homeland Security from Terminating Temporary Protected Status*.

[41] For information on country conditions, see CRS Report R43616, *El Salvador: Background and U.S. Relations*; CRS Report R44560, *Nicaragua: In Brief*; and CRS Report RL34027, *Honduras: Background and U.S. Relations*.

[42] The issue of Haitian TPS had arisen several times prior, most notably after the U.S. Ambassador declared Haiti a disaster in September 2004 due to the magnitude of the effects of Tropical Storm Jeanne. A series of tropical cyclones in 2008 resulted in hundreds of deaths and led some to label the city of Gonaives uninhabitable. The George W. Bush Administration did not grant TPS or another form of blanket relief to Haitians, nor was legislation enacted that would have provided TPS to Haitians, such as H.R. 522 in the 110th Congress. For background information on Haitian migration to the United States, see archived CRS Report RS21349, *U.S. Immigration Policy on Haitian Migrants*.

[43] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Designation of Haiti for Temporary Protected Status," 75 *Federal Register* 3476-3479, January 21, 2010.

DHS Secretary Janet Napolitano stated: "Providing a temporary refuge for Haitian nationals who are currently in the United States and whose personal safety would be endangered by returning to Haiti is part of this Administration's continuing efforts to support Haiti's recovery."[44] On July 13, 2010, DHS announced a six-month extension of the TPS registration period for Haitian nationals, citing difficulties nationals were experiencing in obtaining documents to establish identity and nationality, and in gathering funds required to apply for TPS.[45]

DHS extended the TPS designation for Haiti in May 2011, providing another 18 months of TPS, through January 22, 2013.[46] At the same time, DHS issued a redesignation, enabling eligible Haitian nationals who had arrived in the United States up to one year after the earthquake to receive TPS. The redesignation targeted individuals who were allowed to enter the United States immediately after the earthquake on temporary visas or humanitarian parole,[47] but were not covered by the initial TPS designation.[48] Subsequently, Secretary Jeh Johnson extended Haiti's designation several more times, through July 22, 2017.[49]

A May 2, 2017, letter from members of the Congressional Black Caucus to DHS Secretary John Kelly urged another 18-month extension of TPS for Haiti, citing continued recovery difficulties from the 2010 earthquake that killed over 300,000 people, an ongoing cholera epidemic, and additional damages from Hurricane Matthew in 2016.[50] On May 24, 2017, Secretary Kelly extended Haiti's TPS designation for six months (the minimum allowed by statute), from its planned expiration on July 22, 2017, to January 22, 2018, and encouraged beneficiaries to prepare to return to Haiti should its designation be terminated after six months.[51] An October 4, 2017, letter from the Haitian ambassador to Acting DHS Secretary Elaine Duke requested that Haiti's designation be extended for an additional 18 months.[52] On November 20, 2017, DHS announced its decision to terminate TPS for Haiti, with an 18-month transition period. Its designation was set to terminate on July 22, 2019.[53] As of the date of this report, the termination is on hold as the result of a court order.[54]

---

[44] U.S. Department of Homeland Security, "Statement from Secretary Janet Napolitano," press release, January 15, 2010.

[45] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Extension of the Initial Registration Period for Haitians under the Temporary Protected Status Program," 75 *Federal Register* 39957, July 13, 2010.

[46] U.S. Department of Homeland Security, "Secretary Napolitano Announces Extension of Temporary Protected Status for Haitian Beneficiaries," press release, May 17, 2011.

[47] Parole allows an individual, who may be inadmissible or otherwise ineligible for admission into the United States, to be granted authorization to enter the United State for a temporary period. INA §212(d)(5) (8 U.S.C. §1182(d)(5)).

[48] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Extension and Re-designation of Haiti for Temporary Protected Status," 76 *Federal Register* 29000-29004, May 19, 2011.

[49] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Extension of the Designation of Haiti for Temporary Protected Status," 80 *Federal Register* 51582-51588, August 25, 2015.

[50] For conditions following Hurricane Matthew, see CRS In Focus IF10502, *Haiti: Cholera, the United Nations, and Hurricane Matthew*.

[51] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Extension of the Designation of Haiti for Temporary Protected Status," 82 *Federal Register* 23830-23837, May 24, 2017.

[52] Letter from Paul G. Altidor, Ambassador to the United States from Haiti, to Elaine C. Duke, Acting Secretary of the Department of Homeland Security, October 4, 2017.

[53] U.S. Department of Homeland Security, "Acting Secretary Elaine Duke Announcement On Temporary Protected Status For Haiti," press release, November 20, 2017, https://www.dhs.gov/news/2017/11/20/acting-secretary-elaine-duke-announcement-temporary-protected-status-haiti.

[54] For more information on litigation related to TPS terminations, see CRS Legal Sidebar LSB10215, *Federal District*

## Liberia

Liberians in the United States first received TPS in March 1991 following the outbreak of civil war. Although that war ended, a second civil war began in 1999 and escalated in 2000.[55] In 1999, President Clinton authorized DED for an estimated 10,000 Liberians in the United States after their TPS designation expired. DED was subsequently extended by President Clinton and President George W. Bush to September 29, 2002. On October 1, 2002, Liberia was designated again for TPS due to ongoing armed conflict.[56] In 2006, the George W. Bush Administration announced that TPS for Liberia would expire on October 1, 2007, but that covered Liberians would be eligible for DED until March 31, 2009. On March 23, 2009, President Obama extended DED for those Liberians until March 31, 2010, and several times thereafter.[57]

As a result of the 2014-2016 Ebola outbreak in West Africa, eligible Liberians were again granted TPS, as were eligible Sierra Leoneans and Guineans.[58] On September 26, 2016, DHS issued a notice terminating TPS for Liberia with an effective date of May 21, 2017; this date provided a six-month extension past when it was previously set to expire, in order to provide an "orderly transition" for beneficiaries to "prepare for and arrange their departure from the United States or … to apply for other immigration benefits for which they are eligible."[59] Similar termination notices were issued for Sierra Leone and Guinea.

For a specially designated population of Liberians who had been residing in the United States since October 2002, their DED status was extended by President Obama through March 31, 2018.[60] President Trump announced on March 27, 2018, that extending DED again for these Liberians was not warranted due to improved conditions in Liberia, but that the United States' foreign policy interests warranted a 12-month wind-down period.[61] A lawsuit challenging the termination was filed in federal court on March 8, 2019.[62] Three days before the effective

---

*Court Enjoins the Department of Homeland Security from Terminating Temporary Protected Status.*

[55] See archived CRS Report RL32243, *Liberia: Transition to Peace*.

[56] U.S. Department of Justice, Immigration and Naturalization Service, "Designation of Liberia Under the Temporary Protected Status Program," 67 *Federal Register* 61664-61667, October 1, 2002.

[57] See, for example, U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Filing Procedures and Automatic Extension of Employment Authorization and Related Documentation for Liberians Provided Deferred Enforced Departure," 75 *Federal Register* 15715, March 30, 2010; The White House (President Obama), *Presidential Memorandum—Deferred Enforced Departure for Liberians*, Memorandum for the Secretary of Homeland Security, September 28, 2016, https://www.whitehouse.gov/the-press-office/2016/09/28/presidential-memorandum-deferred-enforced-departure-liberians.

[58] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Designation of Liberia for Temporary Protected Status," 79 *Federal Register* 69502-69502, November 21, 2014; and U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Extension of the Initial Registration Period for Guinea, Liberia and Sierra Leone for Temporary Protected Status," 80 *Federal Register, Number 122, 36551-36552,* June 25, 2015.

[59] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Six-Month Extension of Temporary Protected Status Benefits for Orderly Transition Before Termination of Liberia's Designation for Temporary Protected Status," 81 *Federal Register* 66059-66064, September 26, 2016.

[60] The White House (President Obama), "Presidential Memorandum—Deferred Enforced Departure for Liberians," Memorandum for the Secretary of Homeland Security, September 28, 2016, https://www.whitehouse.gov/the-press-office/2016/09/28/presidential-memorandum-deferred-enforced-departure-liberians.

[61] "Presidential Memorandum for the Secretary of State and the Secretary of Homeland Security," March 27, 2018, https://www.whitehouse.gov/presidential-actions/presidential-memorandum-secretary-state-secretary-homeland-security/.

[62] Complaint, African Cmtys. Together v. Trump, No. 1:19-cv-10432 (D. Mass. Mar. 8, 2019).

termination date, President Trump—citing congressional efforts to provide longer-term relief for Liberians—announced a 12-month extension of the wind-down period, to last through March 30, 2020.[63] Approximately 589 Liberians have approved employment authorization documents (EADs) under this DED directive.[64] This number does not reflect all Liberians who might be covered under this DED announcement—only those who applied for and received an EAD.[65]

The 116th Congress incorporated the Liberian Refugee Immigration Fairness Act into the FY2020 National Defense Authorization Act; it allows Liberians who have been continuously present in the United States since November 2014 and their family members to apply for LPR status. President Trump signed it into law on December 20, 2019 (P.L. 116-92, Section 7611).

## Nepal

Nepal was devastated by a massive earthquake on April 25, 2015, killing over 8,000 people. The earthquake and subsequent aftershocks demolished much of Nepal's housing and infrastructure in many areas. Over half a million homes were reportedly destroyed.[66] On June 24, 2015, citing a substantial but temporary disruption in living conditions as a result of the earthquake, DHS Secretary Johnson designated Nepal for TPS for an 18-month period.[67] TPS for Nepal was extended for 18 months in October 2016.[68] On April 26, 2018, Secretary Kirstjen Nielsen announced her decision to terminate the TPS designation for Nepal, citing her assessment that the original conditions under which the country was designated were no longer substantial and that Nepal could adequately handle the return of its nationals.[69] A 12-month delay of the termination date to allow for an orderly transition was also announced; the TPS designation for Nepal was thus set to terminate on June 24, 2019.[70] As of the date of this report, the termination is on hold as the result of a court order.[71]

---

[63] The White House (President Trump), "Presidential Memorandum on Extension of Deferred Enforced Departure for Liberians," March 28, 2019, https://www.whitehouse.gov/presidential-actions/memorandum-extension-deferred-enforced-departure-liberians/.

[64] Numbers provided to CRS by USCIS and represent individuals with a valid EAD as of February 4, 2020.

[65] Individuals who benefit from DED are not required to register for the status with USCIS unless they are applying for work authorization. The total number of Liberians currently covered by DED is likely less than 4,000, based on USCIS's estimate of eligible individuals for the TPS designation that ended on September 30, 2007. U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Extension of the Designation of Liberia for Temporary Protected Status," 70 *Federal Register* 48176-48179, August 15, 2005.

[66] CRS Report R44303, *Nepal: Political Developments and U.S. Relations*. For information on more recent country conditions, see CRS In Focus IF10216, *Nepal*

[67] U.S. Department of Justice, Immigration and Nationalization Service, "Designation of Nepal for Temporary Protected Status," 80 *Federal Register* 36346-36350, June 24, 2015.

[68] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Extensions of the Designation of Nepal for Temporary Protected Status," 81 *Federal Register* 74470-74475, October 26, 2016.

[69] U.S. Department of Homeland Security, "Secretary Kirstjen M. Nielsen Announcement on Temporary Protected Status for Nepal," press release, April 26, 2018, https://www.dhs.gov/news/2018/04/26/secretary-kirstjen-m-nielsen-announcement-temporary-protected-status-nepal.

[70] Ibid.

[71] For more information on litigation related to TPS terminations, see CRS Legal Sidebar LSB10215, *Federal District Court Enjoins the Department of Homeland Security from Terminating Temporary Protected Status*.

## Somalia

Somalia has endured decades of chronic instability and humanitarian crises. Since the collapse of the authoritarian Siad Barre regime in 1991, it has lacked a viable central authority capable of exerting territorial control, securing its borders, or providing security and services to its people.[72] Somalia was first designated for TPS in 1991 based on "extraordinary and temporary conditions…that prevent aliens who are nationals of Somalia from returning to Somalia in safety."[73] Through 24 subsequent extensions or redesignations, Somalia has maintained TPS due to insecurity and ongoing armed conflict that present serious threats to the safety of returnees. In January 2020, DHS extended Somalia's designation for another 18 months through September 17, 2021.[74]

## Sudan and South Sudan

Decades of civil war preceded South Sudan's secession from the Republic of Sudan in 2011.[75] Citing both ongoing armed conflict and extraordinary and temporary conditions that would prevent the safe return of Sudanese nationals, the Attorney General designated Sudan for TPS on November 4, 1997. Since then, Sudan has been redesignated or had its designation extended 14 times.

On July 9, 2011, South Sudan became a new nation.[76] With South Sudan's independence from the Republic of Sudan, questions arose about whether nationals of the new nation would continue to be eligible for TPS. In response, Secretary Napolitano designated South Sudan for TPS on October 17, 2011.[77] TPS has been extended or redesignated six times since due to ongoing armed conflict and extraordinary and temporary conditions in South Sudan, including "ongoing civil war marked by brutal violence against civilians, egregious human rights violations and abuses, and a humanitarian disaster on a devastating scale across the country."[78] The latest extension was for 18 months and expires on November 2, 2020.[79]

Meanwhile, citing improved conditions in Sudan, including a reduction in violence and an increase in food harvests, Acting DHS Secretary Duke announced in September 2017 that

---

[72] See CRS In Focus IF10155, *Somalia*.

[73] U.S. Department of Justice, Immigration and Nationalization Service, "Designation of Nationals of Somalia for Temporary Protected Status," 56 *Federal Register* 46804-46805, September 16, 1991.

[74] U.S. Citizenship and Immigration Services, "Temporary Protected Status Designated Country: Somalia," https://www.uscis.gov/humanitarian/temporary-protected-status/temporary-protected-status-designated-country-somalia.

[75] See CRS In Focus IF10182, *Sudan*.

[76] See CRS In Focus IF10218, *South Sudan*.

[77] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Designation of Republic of South Sudan for Temporary Protected Status," 76 *Federal Register* 63629-63635, October 13, 2011.

[78] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Extension of South Sudan for Temporary Protected Status," 82 *Federal Register* 44205-44211, September 21, 2017.

[79] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Extension of the Designation of South Sudan for Temporary Protected Status," 84 *Federal Register* 13688-13694, May 3, 2019.

Sudan's TPS designation would expire on November 2, 2018.[80] As of the date of this report, the termination is on hold as the result of a court order.[81]

## Syria

The political uprising of 2011 in Syria grew into an intensely violent civil war that has led to 5.6 million Syrians fleeing the country and 6.2 million more internally displaced as of early 2020.[82] On March 29, 2012, Secretary of Homeland Security Janet Napolitano designated Syria for TPS through September 30, 2013, citing temporary extraordinary conditions that would make it unsafe for Syrian nationals already in the United States to return to the country.[83] In that initial granting of TPS, Secretary Napolitano made clear that DHS would conduct full background checks on Syrians registering for TPS.[84] TPS for Syrian nationals has since been extended. The 18-month extension on August 1, 2016, was accompanied by a redesignation, which updated the required arrival date into the United States for Syrians from January 5, 2015, to August 1, 2016.[85] On January 31, 2018, Secretary Nielsen announced her decision to extend the TPS designation for Syria for another 18 months, citing the ongoing armed conflict and extraordinary conditions that prompted the original designation.[86] This announcement did not include a redesignation; thus, Syrians who entered the United States after August 1, 2016, are not eligible.[87] The Trump Administration has since issued another 18-month extension (without redesignation) for Syria through March 31, 2021.[88]

## Yemen

On September 3, 2015, DHS Secretary Johnson designated Yemen for TPS through March 3, 2017, due to ongoing armed conflict in the country.[89] A 2015 DHS press release stated that "requiring Yemeni nationals in the United States to return to Yemen would pose a serious threat to

---

[80] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Termination of the Designation of Sudan for Temporary Protected Status," 82 *Federal Register* 47228-47234, October 11, 2017.

[81] For more information on litigation related to TPS terminations, see CRS Legal Sidebar LSB10215, *Federal District Court Enjoins the Department of Homeland Security from Terminating Temporary Protected Status*.

[82] See CRS Report R43119, *Syria: Overview of the Humanitarian Response*; and CRS Report RL33487, *Armed Conflict in Syria: Overview and U.S. Response*.

[83] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Designation of Syrian Arab Republic for Temporary Protected Status," 61 *Federal Register* 19026-19030, March 29, 2012.

[84] Secretary of Homeland Security Janet Napolitano, "Temporary Protected Status (TPS) for Syrian Nationals," press release, March 23, 2012, http://www.dhs.gov/ynews/releases/20120323-napolitano-statement-syria-tps.shtm.

[85] Previously, Syrians who had arrived in the United States after January 5, 2015, were not eligible for TPS. The redesignation allows Syrians that arrived between January 5, 2015, and August 1, 2016, to be eligible for TPS. U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Extension and Redesignation of Syria for Temporary Protected Status," 81 *Federal Register* 50533-50541, August 1, 2016.

[86] U.S. Department of Homeland Security, "Secretary of Homeland Security Kirstjen M. Nielsen Announcement On Temporary Protected Status For Syria," press release, January 31, 2018, https://www.dhs.gov/news/2018/01/31/secretary-homeland-security-kirstjen-m-nielsen-announcement-temporary-protected.

[87] U.S. Department of Homeland Security, Citizenship and Immigration Services, "Extension of the Designation Syria for Temporary Protected Status," 83 *Federal Register* 9329-9336, March 5, 2018.

[88] U.S. Department of Homeland Security, Citizenship and Immigration Services, "Extension of the Designation Syria for Temporary Protected Status," 84 *Federal Register* 49751-49757, September 23, 2019.

[89] U.S. Department of Homeland Security, Citizenship and Immigration Services, "Designation of the Republic of Yemen for Temporary Protected Status," 80 *Federal Register* 53319-53323, September 3, 2015.

their personal safety."[90] Since 2015, the war in Yemen has killed over 100,000 people, including civilians as well as combatants. According to the United Nations, Yemen is the world's worst humanitarian crisis, with 80% of the population in need of assistance. Relief efforts in the region have been complicated by ongoing violence and considerable damage to the country's infrastructure.[91] On January 4, 2017, DHS extended and redesignated Yemen's current TPS designation through September 3, 2018. The redesignation updated the required arrival date into the United States for individuals from Yemen from September 3, 2015, to January 4, 2017.[92] The *Federal Register* notice explained that the "continued deterioration of the conditions for civilians in Yemen and the resulting need to offer protection to individuals who have arrived in the United States after the eligibility cutoff dates" warranted the redesignation of TPS.[93] The Trump Administration has twice extended Yemen's TPS designation for durations of 18 months, but the arrival cutoff date remains the same.[94] Its current designation lasts through September 3, 2021.[95]

## State of Residence of TPS Recipients

Individuals with TPS reside in all 50 states, the District of Columbia, and the U.S. territories. The largest populations live in traditional immigrant gateway states: California, Florida, Texas, and New York. In addition, six other states had at least 10,000 TPS recipients as of November 2019: Virginia, Maryland, New Jersey, Massachusetts, North Carolina, and Georgia. Hawaii, Wyoming, Vermont, and Montana had fewer than 100 individuals with TPS. See **Figure 1** and **Table A-1**.

---

[90] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "DHS Announces Temporary Protected Status Designation for Yemen," press release, September 3, 2015, http://www.uscis.gov/news/dhs-announces-temporary-protected-status-designation-yemen.

[91] See CRS Report R43960, *Yemen: Civil War and Regional Intervention*.

[92] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Extension and Redesignation of the Republic of Yemen for Temporary Protected Status," 82 *Federal Register* 859-866, January 4, 2017.

[93] Ibid.

[94] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Extension of the Designation of Yemen for Temporary Protected Status," 83 *Federal Register* 40307-40313, August 14, 2018.

[95] U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, "Temporary Protected Status Designated Country: Yemen," https://www.uscis.gov/humanitarian/temporary-protected-status/temporary-protected-status-designated-country-yemen.

**Figure 1. Individuals with Temporary Protected Status by State of Residence**



**Source:** CRS presentation of data provided by USCIS

**Notes:** These data reflect individuals with TPS as of November 7, 2019. Data include some individuals who have since adjusted to another status (excluding those who became U.S. citizens) and may include individuals who have moved to another state, left the country, or died; data do not necessarily include all nationals of the specified countries who are in the United States and are eligible for the status.

# Adjustment of Status

A grant of TPS does not provide a recipient with a designated pathway to LPR status; however, a TPS recipient is not barred from acquiring nonimmigrant or immigrant status if he or she meets the requirements. There are statutory limitations on Congress providing adjustment of status to TPS recipients. Section 244(h) of the INA (8 U.S.C. 1254a(h)) states that the consideration of any bill, resolution, or amendment that provides for the adjustment to lawful temporary or lawful permanent resident status for any TPS recipient requires a supermajority in the Senate (i.e., three-fifths of all Senators) voting affirmatively.

Over the years, Congress has provided for the adjustment to LPR status to groups of nationals who had been given temporary relief from removal. In 1992, Congress enacted legislation allowing Chinese nationals who had DED following the Tiananmen Square massacre to adjust to LPR status (P.L. 102-404). The Nicaraguan Adjustment and Central American Relief Act (NACARA) (Title II of P.L. 105-100), which became law in 1997, provided eligibility for LPR status to certain Nicaraguans, Cubans, Guatemalans, Salvadorans, and nationals of the former Soviet bloc who had applied for asylum and had been living in the United States for a certain period of time. The following year, Congress passed the Haitian Refugee Immigration Fairness Act, enabling Haitians who had filed asylum claims or who were paroled into the United States

before December 31, 1995, to adjust to lawful permanent residence (P.L. 105-277). The 116th Congress incorporated the Liberian Refugee Immigration Fairness Act into the FY2020 National Defense Authorization Act; it allows Liberians who have been continuously present in the United States since November 2014 and their family members to apply for LPR status. President Trump signed it into law on December 20, 2019 (P.L. 116-92, Section 7611).

Other legislation to allow nationals from various countries with TPS to adjust to LPR status received action in past Congresses, but was not enacted. For instance, the Senate-passed comprehensive immigration reform bill in the 113th Congress (S. 744) did not include specific provisions for foreign nationals with TPS to adjust status, but many would have qualified for the registered provisional immigrant status that S. 744 would have established.[96]

# Selected Legislative Activity in the 116th Congress

Various proposals related to TPS have been introduced and considered in the 116th Congress. These include bills that would extend current TPS designations or add new countries to those designated for TPS (e.g., Venezuela),[97] prohibit federal funds from being used to remove TPS recipients,[98] make TPS or DED recipients eligible for federal financial aid for higher education,[99] or provide adjustment to LPR status for TPS or DED recipients who have been living in the United States for several years.[100] Other bills introduced in the 116th Congress variously seek to limit TPS by transferring authority from DHS to Congress to designate foreign states[101] or making ineligible for TPS aliens who lack a lawful immigration status or who are members of criminal gangs.[102]

Two bills that would provide longer-term lawful status to TPS recipients passed the House. The American Dream and Promise Act of 2019 (H.R. 6) would allow TPS-qualified aliens to adjust to LPR status. It passed the House on June 4, 2019. The Farm Workforce Modernization Act of 2019 (H.R. 5038) would establish a certified agricultural worker (CAW) status and allow DHS to grant such status to TPS recipients and certain other aliens who have performed a certain amount of agricultural labor in the last two years. CAW status would be valid for 5.5 years and could be extended. An alien granted CAW status could apply for LPR status after meeting various requirements, including performing a certain amount of agricultural labor for a number of years. H.R. 5038 passed the House on December 11, 2019. The House also passed H.R. 549, which would designate Venezuela for TPS for a period of 18 months.

In the Senate, the National Defense Authorization Act for Fiscal Year 2020 (S. 1790) includes the Liberian Refugee Immigration Fairness Act (Section 7611), which allows Liberian nationals who have been continuously present in the United States since November 20, 2014, and their family members to apply for LPR status. S. 1790 was signed into law by President Trump on December 20, 2019, and became P.L. 116-92.

---

[96] See archived CRS Report R43097, *Comprehensive Immigration Reform in the 113th Congress: Major Provisions in Senate-Passed S. 744.*

[97] H.R. 549, H.R. 1926, H.R. 2413, H.R. 2783, H.R. 4112, H.R. 4272, H.R. 4303, S. 636, S. 2176, and S. 2478, for example.

[98] H.R. 3931, for example.

[99] H.R. 1298, H.R. 4674, and S. 1346, for example.

[100] H.R. 6, H.R. 1169, H.R. 2783, S. 456, S. 874, S. 879, and S. 1790, for example.

[101] H.R. 3899, for example.

[102] H.R. 98, H.R. 574, H.R. 1106, H.R. 3899, and S. 599, for example.

# Appendix.

## Table A-1. Individuals with Temporary Protected Status by State of Residence

| State | Individuals with TPS | State | Individuals with TPS |
|---|---|---|---|
| Alabama | 890 | Nevada | 4,129 |
| Alaska | 101 | New Hampshire | 366 |
| Arizona | 1,653 | New Jersey | 18,397 |
| Arkansas | 3,525 | New Mexico | 382 |
| California | 74,099 | New York | 50,537 |
| Colorado | 2,964 | North Carolina | 14,865 |
| Connecticut | 2,750 | North Dakota | 105 |
| Delaware | 767 | Ohio | 2,163 |
| District of Columbia | 3,226 | Oklahoma | 971 |
| Florida | 56,513 | Oregon | 914 |
| Georgia | 11,629 | Pennsylvania | 3,103 |
| Hawaii | 96 | Rhode Island | 861 |
| Idaho | 212 | South Carolina | 1,623 |
| Illinois | 3,904 | South Dakota | 253 |
| Indiana | 2,606 | Tennessee | 3,079 |
| Iowa | 1,483 | Texas | 53,069 |
| Kansas | 1,298 | Utah | 1,269 |
| Kentucky | 927 | Vermont | 48 |
| Louisiana | 2,156 | Virginia | 27,705 |
| Maine | 191 | Washington | 2,304 |
| Maryland | 27,178 | West Virginia | 242 |
| Massachusetts | 17,069 | Wisconsin | 647 |
| Michigan | 1,770 | Wyoming | 54 |
| Minnesota | 2,718 | U.S. Virgin Islands | 639 |
| Mississippi | 458 | Puerto Rico | 79 |
| Missouri | 1,427 | Northern Mariana Islands | 29 |
| Montana | 29 | Other/Unknown | 109 |
| Nebraska | 1,745 | **Total** | **411,326** |

**Source:** Data provided to CRS by USCIS.

**Notes:** These data reflect individuals with an approved TPS application as of November 7, 2019; the data include some individuals who have since adjusted to another status (excluding those who became U.S. citizens), may include individuals who have left the country or died, and do not necessarily include all nationals from the specified countries who are in the United States and are eligible for the status. "Other" includes Guam.

## Author Information

Jill H. Wilson
Analyst in Immigration Policy

## Disclaimer

This document was prepared by the Congressional Research Service (CRS). CRS serves as nonpartisan shared staff to congressional committees and Members of Congress. It operates solely at the behest of and under the direction of Congress. Information in a CRS Report should not be relied upon for purposes other than public understanding of information that has been provided by CRS to Members of Congress in connection with CRS's institutional role. CRS Reports, as a work of the United States Government, are not subject to copyright protection in the United States. Any CRS Report may be reproduced and distributed in its entirety without permission from CRS. However, as a CRS Report may include copyrighted images or material from a third party, you may need to obtain the permission of the copyright holder if you wish to copy or otherwise use copyrighted material.