## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AFRICAN COMMUNITIES TOGETHER; SAMUEL DOE; STEPHEN DO; and ABAL DOE, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; and UNITED STATES OF AMERICA,<br><br>*Defendants*. | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR ADMINISTRATIVE STAY**<br><br>Civil Action No. 1:26-cv-10278-BEM |

On July 15, 2026, Defendants moved for summary reversal and a stay of this Court's postponement order, and the First Circuit is likely to act imminently on that motion. Plaintiffs therefore move for an immediate administrative stay of the Secretary of Homeland Security's termination of Ethiopia's TPS designation (the "Termination"), 90 Fed. Reg. 58,028 (Dec. 15, 2025), in order to allow time for the parties to brief Plaintiffs' renewed postponement motion based on their newly asserted claims. The Court should direct that the administrative stay is effective either (1) immediately or (2) upon the issuance of the First Circuit's mandate in *African Communities Together v. Mullin*, No. 26-1376. Further, because the First Circuit is expected to rule imminently, this Court should issue the administrative stay as soon as practicable. As discussed below, there is ample authority supporting the issuance of an administrative stay. Indeed, another district court in a parallel TPS matter recently entered an administrative stay under

1

nearly identical circumstances.  Order, *Aung Doe v. Dep't of Homeland Sec.*, No. 25-cv-15483 (N.D. Ill. July 19, 2026) (ECF 97).  This Court should follow the same course here.

The "point" of an administrative stay "is to minimize harm while [a] court deliberates." *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring).  And Plaintiffs will suffer lopsided harm in the absence of an emergency stay.  They will immediately lose critical legal protections and face removal to a country the Court has already found to be beset by "ongoing dangers" including "armed conflicts," "drought and floods, disease outbreaks," "war crimes," and "inadequate humanitarian assistance."  ECF 56 at 26 (citations omitted).  An administrative stay is necessary to preserve the status quo—including existing TPS protections—pending adjudication of Plaintiffs' renewed motion for postponement.

## BACKGROUND

Following a civil war marked by hundreds of thousands of deaths, extrajudicial killings, torture, and gender-based violence, Ethiopia was initially designated for TPS in 2022.  Designation of Ethiopia for Temporary Protected Status, 87 Fed. Reg. 76,704 (Dec. 12, 2022); Compl. ¶ 57. That designation was extended in April 2024, and the renewed designation noted that— notwithstanding a formal cessation of the civil war—armed conflict remained ongoing, severe drought had led to starvation and mass displacement, and significant disease outbreaks remained uncontrolled.  Extension and Redesignation of Ethiopia for Temporary Protected Status, 89 Fed. Reg. 26,172, 26,174–76 (Apr. 15, 2024).  In September, 2025, President Trump determined that conditions in Ethiopia "pose[d] an unusual and extraordinary threat" and extended a national emergency declaration for the country.  Continuation of National Emergency With Respect to Ethiopia, 90 Fed. Reg. 43,901 (Sept. 8, 2025).  Only three months later, Defendants issued a Federal Register notice purporting to terminate TPS status for Ethiopia, effective February 13, 2026.  Termination, 90 Fed. Reg. 58,028.

Plaintiffs filed this suit, moved for an emergency postponement of the Termination, and sought an administrative stay to "prevent irreparable harms" pending full consideration of their claims. ECF 14 at 2; *see also* ECF 1. The Court issued an administrative stay "[t]o preserve the status quo in advance of the Court's full consideration of Plaintiffs' motion" for postponement. ECF 36. The Court later postponed the Termination, concluding that Plaintiffs were likely to succeed on certain of their APA claims and would suffer irreparable harm if TPS were terminated for Ethiopia—a nation, it observed, that is replete with "ongoing dangers." ECF 56 at 26; *see* 5 U.S.C. § 705.

The government took an interlocutory appeal of the postponement order, ECF 57, and the Parties agreed to hold this case in abeyance pending rulings from the United States Supreme Court in two related cases, *Mullin v. Doe*, No. 25-1083 (U.S.), and *Trump v. Miot*, No. 25-1084 (U.S.). *See* ECF 60 (motion), 61 (order granting motion).

On June 25, 2026, the Supreme Court issued its consolidated opinion in *Mullin* and *Miot*, holding that the TPS statute's judicial review bar, 8 U.S.C. § 1254a(b)(5)(A), extends to APA claims challenging both the substance of a TPS termination and the procedures leading to a termination. *Mullin v. Doe*, 609 U.S. ----, 2026 WL 1825840. Shortly after, the government asked this Court to lift the abeyance and issue an indicative ruling that it would dissolve the postponement in light of *Mullin*. ECF 67. Plaintiffs opposed the government's motion, filed an amended complaint asserting new claims not subject to the review bar, and filed a renewed motion for postponement based on their new claims. ECF 70, 71, 72. The Court has not acted on those motions.

The government then moved in the First Circuit for an administrative stay, a stay pending appeal, and summary reversal of the postponement order. Mot. to Lift Abeyance and for Stay

Pending Appeal, Immediate Admin. Stay, and Summ. Reversal, *African Cmtys. Together v. Mullin*, No. 26-1376 (1st Cir. July 15, 2026).  The First Circuit denied the government's request for an administrative stay, but set expedited briefing and has indicated it will rule "as soon as practicable" following the conclusion of briefing on the government's motion.  Order 1, *African Cmtys. Together v. Mullin*, No. 26-1376 (1st Cir. July 16, 2026).  Briefing is scheduled to conclude on Friday, July 24, 2026.  Plaintiffs acknowledge that the reasoning underlying the existing postponement order is inconsistent with *Mullin* and therefore have not opposed summary reversal.  Resp. to Mot. for Stay & Summ. Reversal, *African Cmtys Together v. Mullin*, No, 26-1376 (1st Cir. July 21, 2026).  Plaintiffs have opposed the government's stay request and have asked the First Circuit to remand to this Court so that it may consider the claims in their proposed Amended Complaint.  *Id.* at 1.  Plaintiffs have also requested that the First Circuit issue its mandate in accordance with the standard timeline—*i.e.*, 21 days after the court issues an order of reversal— so that this Court will have time to consider this Emergency Motion for Administrative Stay before Plaintiffs lose their protected status and suffer immediate irreparable harm.  *Id*.  However, Plaintiffs anticipate that the government will oppose that request, and it is possible that the mandate will issue immediately following the First Circuit's order.

## LEGAL STANDARD

The All Writs Act, 28 U.S.C. § 1651, and the Court's inherent authority to manage its docket empower the Court to issue administrative stays.  *Texas*, 144 S. Ct. at 798 n.1 (Barrett, J., concurring).  An administrative stay "freeze[s] legal proceedings until the court can rule on a party's request for expedited relief" so as to "permit time for briefing and deliberation."  *Id.* at 798.

The "point" of an administrative stay "is to minimize harm while [a] court deliberates."  *Id.* So, unlike more durable forms of preliminary relief, administrative stays "do not typically reflect the court's consideration of the merits" and a movant need not demonstrate likelihood of success

on the merits to obtain one. *Id.*; *see also, e.g.*, ECF 36 (granting administrative stay to "preserve the status quo in advance of the Court's full consideration of Plaintiffs' motion" for postponement). Instead, they involve an initial "judgment about the relative consequences of staying" a challenged action "versus allowing it go to into effect"—which is to say, the risk of irreparable harm. *Texas*, 144 S. Ct. at 798 (Barrett, J., concurring). Because it involves no assessment of the merits, "[a]n administrative stay should last no longer than necessary to make an intelligent decision on" preliminary relief. *Id.* at 799.

## ARGUMENT

Plaintiffs acknowledge that *Mullin* is inconsistent with the reasons supporting the Court's order postponing termination of South Sudan's TPS designation. Plaintiffs therefore did not oppose the government's request that the First Circuit reverse the postponement order and have asked the First Circuit to remand in order to clear the path for this Court to address their new claims. *See* ECF 71 (Amended Complaint) ¶¶ 240–286. Unless the First Circuit stays the postponement order, it "remains in effect, even if vacated on appeal" "until the mandate is issued." 5 Am. Jur. 2d Appellate Review § 679; *see also Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 947 (2d Cir. 1983) ("For the sake of clarity we remind [the parties] that the April 11 Order remains in effect until issuance of this Court's mandate . . . ."). As noted above, Plaintiffs have asked the First Circuit to issue its mandate 21 days after issuing an opinion or order reversing the existing postponement. The First Circuit may or may not, of course, issue the mandate in that timeframe. To prevent a scenario in which the Termination takes temporary effect upon issuance of the mandate and before the Court has an opportunity to consider granting preliminary relief based on Plaintiffs' new claims, the Court should issue an administrative stay to take effect immediately or upon issuance of the First Circuit's mandate. *See* 2A Fed. Proc., L. Ed. § 3:1006

("[A] district court has discretion to issue an order for injunctive relief to take effect upon the issuance of an appellate mandate based on evidence not before the court of appeals . . . .").

## I. An Administrative Stay Pending Resolution of Plaintiffs' Request for Preliminary Relief Is Warranted to Prevent Severe Harm to Ethiopian TPS Holders and Applicants.

The purpose of an administrative stay is to "minimize harm." *Texas*, 144 S. Ct. at 798 (Barrett, J., concurring). Even a short lapse in interim relief would result in extreme and irreparable harm to Plaintiffs—as the Court has already recognized. ECF 56 at 25–28.[1] Two Plaintiffs and many class members have TPS as their sole form of legal status in the United States and would face potential detention and removal to a country a "risk of another civil war" and facing "armed conflicts, natural disasters such as drought and floods, disease outbreaks, war crimes, crimes against humanity, grave human rights abuses, [and] inadequate humanitarian assistance to the local population. *Id.* at 26 (citations omitted). Even setting aside the risk of removal, TPS holders and applicants may lose continuous legal status, jeopardizing their ability to ever become lawful permanent residents of the United States—the nation they call home. *See* 8 U.S.C. § 1255(c)(2) (certain applicants may not obtain permanent status if they are "in unlawful immigration status on the date of filing" or have failed to "maintain continuously a lawful status since entry into the United States."). They may also lose work authorization, drivers' licenses, and accordingly the ability to support themselves or their families. *See, e.g.*, 15-3 (Decl. of Pl. Abal Doe). Those harms would be "very likely impossible to rectify through final relief that may come at an indeterminate future point." *Doe v. Noem*, 817 F. Supp. 3d 27, 57 (D. Mass. 2026). But if the

---

[1] *Mullin* in no way undermines the Court's prior conclusion that Ethiopian TPS holders and applicants would face substantial and irreparable harm if the Termination were to take effect. In *Mullin*, the parties had "no dispute that the plaintiffs will suffer irreparable harm absent postponement of the TPS decisions," and *Mullin* did not concern Ethiopia. 2026 WL 1825840, at *17 (Kagan, J., dissenting).

Court does not grant an administrative stay, those harms could materialize as soon as the First Circuit issues its mandate and before this Court has an opportunity to address Plaintiffs' arguments.[2]

Plaintiffs' Amended Complaint and renewed request for a postponement of the Termination also raise significant legal issues that are not appropriately evaluated in haste. Plaintiffs allege that the termination of Ethiopia's TPS designation violated their constitutional right to due process and that the Secretary of Homeland Security lacks statutory authority to terminate TPS designations. *See* 71 (proposed Amended Complaint) ¶¶ 240–286; *see also* ECF 73 (explaining why Plaintiffs are likely to succeed on these claims).

District courts routinely—and under far less harrowing circumstances—exercise their authority to preserve existing conditions while considering requests for emergency relief. *See, e.g.*, *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 763 F. Supp. 3d 13, 17 (D.D.C. 2025) (issuing an administrative stay of agency action, pending receipt and consideration of the parties' expedited briefing on the plaintiffs' request for a temporary restraining order). Courts also routinely issue administrative stays to preserve the status quo so that they may receive party briefing and rule on pending motions. *See, e.g.*, *id.*; *Gallusz v. LLP Mortg., Inc.*, 2025 WL 1360771, at *2 (S.D. Cal. Apr. 15, 2025); *Dellinger v. Bessent*, 2025 WL 450488, at *1 (D.D.C. Feb. 10, 2025); *Richman v. United States*, 2025 WL 3505458, at *1 (D.D.C. Dec. 6, 2025). And in the broader TPS litigation landscape, another Court has issued a post-*Mullin* administrative stay

---

[2] The government has also attempted to take advantage of brief lapses in TPS status to argue that once a termination goes into effect, it cannot be postponed under 5 U.S.C. § 705. *See, e.g.*, *Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807, 833 (N.D. Cal.), *aff'd,* 150 F.4th 1000 (9th Cir. 2025). Although courts have rightly rejected that position, *id.*, it underscores the unnecessary risks associated with allowing the Termination to take effect even momentarily.

to allow other plaintiffs to present additional claims similar to those Plaintiffs raise here. *See* Order, *Aung Doe v. Dep't of Homeland Sec.*, No. 25-cv-15483 (N.D. Ill. July 19, 2026) (ECF 97).

The Court can and should exercise its power to preserve the status quo to ensure Plaintiffs receive a meaningful opportunity to litigate their new claims.

**II.      The Court Has Authority to Issue an Administrative Stay that Is Either Effective Now or Upon Issuance of the First Circuit's Mandate.**

In light of the imminent irreparable harm faced by Plaintiffs and the other equitable considerations addressed above, this Court should immediately enter an administrative stay that is either effective now or upon issuance of the First Circuit's mandate. There is ample authority supporting the Court's jurisdiction to enter an administrative stay under either approach.

*First*, this Court may enter an administrative stay now that is immediately effective. The government took an interlocutory appeal of this Court's order postponing the Termination, and that appeal remains pending. *See* ECF 57; *African Cmtys. Together v. Mullin*, No. 26-1376 (1st Cir.). But because that appeal is interlocutory, the Court "may proceed with the litigation while the interlocutory appeal is pending" in the absence of a stay. Wright & Miller, Federal Practice and Procedure § 2962 (3d ed.) (2026 update). Although a "a district court ordinarily may not alter the judgment under review," "[i]n most respects and absent a stay, further proceedings in the same controversy often may continue" in the district court. *Contour Design, Inc. v. Chance Mold Steel Co.*, 649 F.3d 31, 34 (1st Cir. 2011). Further, a district court generally retains jurisdiction over claims not on appeal. *See Johnson v. 3M Co.*, 55 F.4th 1304, 1309 (11th Cir. 2022) ("The notice of appeal divested the district court of jurisdiction over only one claim in a single count."). And a district court retains jurisdiction to stay preliminary relief pending an appeal—a step that often occurs after an appeal has been noticed. *See* Fed. R. App. P. 8(a)(1); *Matter of Miranne*, 852 F.2d 805, 806 (5th Cir. 1988) (holding that "the district court retained jurisdiction to grant appellant's

request for a stay despite the fact that a notice of appeal to this Court was filed"). In light of these authorities, this Court possesses the authority to enter a protective administrative stay to allow for briefing on Plaintiffs' new claims.

*Second*, at a minimum—and even if this Court presently lacks jurisdiction over Plaintiffs' new claims—this Court may enter an administrative stay now that is effective upon the issuance of the First Circuit's mandate. That is what the *Aung Doe* district court did. *Compare* Order, *Aung Doe* (granting administrative stay "effective immediately upon this Court's receipt of the Seventh Circuit's mandate"), *with* Order, *Aung Doe v. Mullin*, No. 26-1294 (7th Cir. July 16, 2026) (Doc. 34) (granting summary reversal with mandate to issue July 27). And treatises and courts both acknowledge that "a district court has discretion to issue an order for injunctive relief to take effect upon the issuance of an appellate mandate based on evidence not before the court of appeals." 2A Fed. Proc., L. Ed. § 3:1006. The Second Circuit has explicitly blessed the use of such a procedure to ensure there is no gap in interim relief when, although a legal error requires vacating existing interim relief, there are additional bases not before the court of appeals on which a district court could grant relief. *Bridge C.A.T. Scan Assocs.*, 710 F.2d at 947 (vacating preliminary relief in trade secrets case but noting district court could "pending a hearing on . . . preliminary injunctive relief, [] grant a TRO" and "provide that such a TRO is to take effect upon the issuance of our mandate" to ensure continuous relief against potential disclosure of trade secret).

## CONCLUSION

Plaintiffs respectfully request that the Court enter an administrative stay of the Termination until the Court rules on Plaintiffs' motion for preliminary relief, to take effect immediately automatically upon receipt of the First Circuit's mandate. In the alternative, Plaintiffs request such other interim relief as the Court deems proper to prevent irreparable harm and preserve its ability to meaningfully adjudicate Plaintiffs' claims.

Dated: July 22, 2026                    Respectfully Submitted,

                                        */s/ Joy Chen*
                                        Joy Chen (BBO No. 714192)
                                        COVINGTON & BURLING LLP
                                        One International Place
                                        Suite 1020
                                        Boston, MA 02110-2627
                                        (617) 603-8821
                                        JChen@cov.com

                                        */s/ Paul Killebrew*
                                        Mark H. Lynch (*pro hac vice*)
                                        Stephen Petkis (*pro hac vice*)
                                        Daniel G. Randolph (*pro hac vice*)
                                        Paul Killebrew (*pro hac vice*)
                                        Ayana M. Lindsey (*pro hac vice*)
                                        COVINGTON & BURLING LLP
                                        One CityCenter
                                        850 Tenth Street, NW
                                        Washington, D.C. 20001
                                        (202) 662-6000
                                        MLynch@cov.com
                                        SPetkis@cov.com
                                        DRandolph@cov.com
                                        PKillebrew@cov.com
                                        ALindsey@cov.com

                                        */s/ Sarah Leadem*
                                        Sarah Leadem (*pro hac vice*)
                                        COVINGTON & BURLING LLP
                                        Salesforce Tower
                                        415 Mission Street, Suite 5400
                                        San Francisco, CA 94105
                                        (415) 591-6000
                                        SLeadem@cov.com

                                        */s/ Nargis Aslami*
                                        Nargis Aslami (BBO No. 714848)
                                        Melissa Keaney (*pro hac vice*)
                                        Collin Poirot (*pro hac vice*)
                                        Abbey Rutherford (*pro hac vice*)
                                        MUSLIM ADVOCATES
                                        1032 15th Street N.W. #362
                                        Washington, D.C. 20005
                                        (202) 897-2622
                                        Nargis@muslimadvocates.org

10

Melissa@muslimadvocates.org
Collin@muslimadvocates.org
Abbey@muslimadvocates.org

/s/ Erik Crew
Erik Crew (*pro hac vice*)
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
(949) 603-7411
ecrew@haitianbridge.org

*Counsel for Plaintiffs African Communities
Together, Samuel Doe, Stephen Doe, Abal Doe, and
the Proposed Class*

11