UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AFRICAN COMMUNITIES TOGETHER, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>KRISTI NOEM, *in her official capacity as Secretary of Homeland Security*, et al.,<br><br>    Defendants. | Case No. 26-cv-10278-BEM |

**OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION
FOR ADMINISTRATIVE STAY**

On June 29, 2026, Defendants filed in this Court a Motion to Lift Abeyance and Issue Indicative Ruling or Stay Pending Appeal.  Doc. No. 67.  On July 13, 2026, Plaintiffs opposed Defendant's Motion and filed an Amended Complaint purporting to assert new claims against Defendants.  Doc. No. 71.  That same day, Plaintiffs filed a Renewed Emergency Motion for Administrative Stay and to Postpone Effective Date of Agency Action.  Doc. No. 72.  All of these motions remain pending, with Defendants' opposition to Plaintiffs' Renewed Emergency Motion for Administrative Stay and to Postpone Effective Date of Agency Action due Monday, July 27, 2026, in accordance with Local Rule 7.1.

In the interim, on July 15, 2026, Defendants filed a Motion to Lift Abeyance and for Stay Pending Appeal, Immediate Administrative Stay, and Summary Reversal in the First Circuit.  As Plaintiffs point out, the First Circuit is likely to act imminently on Defendants' request for summary reversal.  Pl. Memo, ECF No. 79, p. 1.  To that end, Plaintiffs have now filed a second Emergency Motion for Administrative Stay.  Doc. No. 78.  Plaintiffs' motions seeking an administrative stay should be denied.

Plaintiffs' requests appear to rest on the premise that an administrative stay may issue without any showing that they are likely to prevail.  But administrative stays should not be blind to the merits, and Plaintiffs' new claims—an *ultra vires* claim and a procedural due process claim—fail as a matter of law, for reasons described below and that will be fully developed in Defendants' forthcoming opposition (due on July 27, 2026) to Plaintiffs' Renewed Motion for Administrative Stay and Postponement of Effective Date of Agency Action.  To start, Plaintiffs' *ultra vires* claim is squarely foreclosed by the Supreme Court's recent decision in *Mullin v. Doe*, No. 25-1083, 2026 WL 1825840 (U.S. June 25, 2026), which confirms that responsibility for decisions under the statute governing Temporary Protected Status ("TPS") rests with the Secretary of Homeland Security.  And the due process claim fails, among other reasons, because a temporary, discretionary immigration benefit is not a protected liberty or property interest.  Because Plaintiffs cannot show any likelihood of success, no interim relief is warranted.

## BACKGROUND

Plaintiffs commenced this action on January 22, 2026, claiming that the termination of Ethiopia's TPS designation violated the Administrative Procedure Act ("APA") and their equal protection rights.  Doc. No. 1.  On April 8, 2026, this Court postponed the effective date of the termination under 5 U.S.C. § 705 after concluding that Plaintiffs were likely to succeed on their APA claims.  Doc. No. 56.

On April 9, 2026, Defendants appealed this Court's Order.  Doc. No. 57.  The Parties thereafter jointly moved to hold the appeal in abeyance pending the Supreme Court's forthcoming decisions in two cases challenging the terminations of TPS for Syria and Haiti.

On June 25, 2026, the Supreme Court held that "the TPS statute's judicial-review bar applies to all non-constitutional claims," and also that an equal-protection claim—analogous to the

one asserted by Plaintiffs here—was not viable. *Mullin*, 2026 WL 1825840, at \*10–13.  On July 13, 2026, Plaintiffs filed an Amended Complaint, adding two "new" claims:  that the TPS termination was *ultra vires* because authority over TPS rests with the Attorney General rather than the Secretary, Doc. No. 71 ¶¶ 8, 265-286, and that the TPS termination deprives Plaintiffs of due process, *id.* ¶¶ 240-264.

Plaintiffs now seek an emergency "administrative stay" of the TPS termination pending adjudication of their Renewed Motion for Administrative Stay and Stay of Effective Date of Agency Action premised on their *ultra vires* and due process claims.  Doc. No. 78.

## ARGUMENT

### I.    The Merits Are Relevant and Decisively Favor the Government

Plaintiffs suggest that an administrative stay may issue without any showing of likelihood of success.  But the merits are relevant to even an administrative stay, and here they strongly weigh against granting Plaintiffs' request. Plaintiffs quote Justice Barrett's observation that administrative stays "minimize harm."  *United States v. Texas*, 144 S. Ct. at 798 (Barrett, J., concurring).  But Justice Barrett went on to explain that just because stays "are 'administrative' does not mean they are value neutral" and that the "*Nken* factors"—which include likelihood of success—"are obviously on the court's radar, and unsurprisingly, they can influence the stopgap decision, even if they do not control it." *Id.* at 798–99 (Barrett, J., concurring) (noting "for example, [that] judges have cited the underlying merits as a reason to grant an administrative stay"). Furthermore, "[a]n administrative stay should last no longer than necessary to make an intelligent decision . . . Once the court is equipped to rule, its obligation to apply the *Nken* factors is triggered." *Id.* at 799 (Barrett, J., concurring).

Here, Plaintiffs' newly asserted claims underlying their second motion for preliminary relief are without merit.  First, as their lead claim, Plaintiffs contend that the termination is *ultra vires* and thus void because the power to terminate TPS was never transferred to the Secretary of Homeland Security and instead remains with the Attorney General.  Doc. No. 73, pp. 5-7.  This claim fails at the threshold because it is non-constitutional, and the Supreme Court has held that "the TPS statute's judicial-review bar applies to all non-constitutional claims." *Mullin*, 2026 WL 1825840, at *10. Further, Plaintiffs' claim that the review bar in § 1254a(b)(5)(A) only applies to determinations of the Attorney General is not viable when the Supreme Court has already held that the bar applies to determinations of the Secretary of Homeland Security. *Id.*  Beyond holding that there can be no judicial review of this claim, *Mullin* also confirmed that "[r]esponsibility for TPS decisions rests with the Secretary."  2026 WL 1825840, at *4 (citing 6 U.S.C. §§ 552(d), 557). The TPS statute refers to the Attorney General only because the Department of Homeland Security did not exist when Congress created TPS in 1990; the Homeland Security Act of 2002, however, transferred the TPS functions to the Secretary.  *See Mejia Rodriguez v. DHS*, 562 F.3d 1137, 1140 n.3 (11th Cir. 2009).  And even if Plaintiffs were somehow right that TPS authority was never transferred to the Secretary, that would not amount to likely success for Plaintiffs, because it would mean that Ethiopia was never properly designated for TPS in the first place and there is no designation to terminate.

Second, with respect to their due process claim, Plaintiffs assert liberty and property interests in their TPS status and related benefits, including employment authorization and removal protection.  Doc. No. 73, pp. 14-16.  That claim fails because TPS holders have no protected liberty or property interest in a status that is temporary by statute and subject to the Secretary's discretionary judgment.  *See* 8 U.S.C. § 1254a(a)(1)(A) (providing that the Secretary "may grant"

TPS to a qualifying national of a designated country); 8 U.S.C. § 1254a(a)(2) ("Work authorization provided under this section shall be effective throughout the period the alien is in temporary protected status under this section"); 8 C.F.R. § 244.2 ("an alien may in the discretion of the director be granted [TPS] if the alien establishes that he or she" meets the eligibility criteria); *Mullin*, 2026 WL 1825840, at \*16 (Thomas, J., concurring) ("The termination of Haiti's TPS designation does not deprive respondents of 'life, liberty, or property' . . . The discretionary and limited status that a TPS designation provides, like any immigration status for aliens, is a government-created privilege, not a core private right."); *Tobar v. Garland*, 65 F.4th 195, 196 (5th Cir. 2023) (TPS is a "discretionary form of relief"); *Bah v. Cangemi*, 548 F.3d 680, 685 (8th Cir. 2008) (same); *Hernandez v. Sessions*, 884 F.3d 107, 112 (2d Cir. 2018) ("aliens have no constitutionally-protected 'liberty or property interest' in such a discretionary grant of relief for which they are otherwise statutorily ineligible"); *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 328 (D. Md. 2018) ("the explicitly temporary nature of the [TPS] program suggests" that holders cannot establish "reliance interests").

## II.    Any Administrative Stay Should Be Time-Limited and Last Only Long Enough To Permit a Ruling on Plaintiffs' Postponement Motion

If the Court nonetheless decides to enter an administrative stay while considering Plaintiffs' motion for postponement under 5 U.S.C. § 705, the Court should enter an order that ends on a specific date, not an order of indefinite duration. *See Doe v. Mullin*, Doc. No. 97, Case No. 1:25-cv-15483 (N.D. Ill. July 20, 2026) (Kennelly, J.) (allowing limited administrative stay from July 17, 2026, to August 7, 2026); *Danco Laboratories, LLC v. Louisiana*, Case No. 26-30203 (U.S. May 4, 2026) (allowing limited administrative stay from May 4, 2026, to May 11, 2026). Here, that specific date should be shortly after the conclusion of briefing on the § 705 motion since "[a]n administrative stay should last no longer than necessary to make an intelligent decision" and a

court's "obligation to apply the *Nken* factors is triggered" as soon as "the court is equipped to rule" on the underlying motion. *Id.* at 799. As a rule of thumb, an administrative stay should last no longer than the analogous relief afforded by a temporary restraining order—particularly since, in the immigration context, plaintiffs seek administrative stays in an effort to avoid the prohibition on classwide injunctive relief in 8 U.S.C. § 1252(f)(1) and in order to evade the Supreme Court's restrictions on nationwide injunctions. *See* Fed. R. Civ. P. 65(b); *Trump v. CASA, Inc.*, 606 U.S. 831 (2025).  Such evasions become all the more apparent and unjustifiable when administrative stays, which can be justifiable only as a "short-lived prelude to the main event"—a ruling on the postponement order—last longer or sweep more broadly than a comparable form of relief actually countenanced by the rules. *Cf. Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985) (All Writs Act "does not authorize [federal courts] to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate."); *Shoop v. Twyford*, 596 U.S. 811, 820 (2022) (same).  To that end, if this Court decides to enter an administrative stay, it should expire by August 3, 2026, approximately one week after the conclusion of briefing on the § 705 motion.

### CONCLUSION

For these reasons, Plaintiffs' Emergency Motion for Administrative Stay should be denied.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: July 24, 2026           By:    */s/ Nicole M. O'Connor*
                                      NICOLE M. O'CONNOR
                                      Assistant United States Attorney
                                      U.S. Attorney's Office

6

1 Courthouse Way, Ste. 9200
Boston, MA 02210
(617) 748-3112
Nicole.o'connor@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Nicole M. O'Connor*
NICOLE M. O'CONNOR
Assistant U.S. Attorney

Dated: July 24, 2026