**IN THE UNITED STATES DISTRICT COURT**
**IN THE DISTRICT OF MASSACHUSETTS**

<table>
<tr><td>

AFRICAN COMMUNITIES TOGETHER; SAMUEL DOE; STEPHEN DOE; and ABAL DOE, on behalf of themselves and all others similarly situated,

<em>Plaintiffs</em>,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of the U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; and UNITED STATES OF AMERICA,

<em>Defendants</em>.

</td><td>

Civil Action No. 1:26-cv-10278-BEM

Leave to file granted on July 29, 2026

</td></tr>
</table>

<u>**PLAINTIFFS' REPLY IN SUPPORT OF RENEWED POSTPONEMENT MOTION**</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT...................................................................................................................... 1

I.     Defendants Have Cited No Statutory Provision Vesting TPS Termination
Authority in the DHS Secretary.................................................................................. 1

II.    Defendants Mischaracterize Plaintiffs' Due Process Claim and Ignore Key
Precedents ................................................................................................................. 7

III.   The Remaining Factors Overwhelmingly Favor Plaintiffs............................................. 10

CONCLUSION................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adame v. Holder*,
762 F.3d 667 (7th Cir. 2014) ........................................................................................8

*Batalla Vidal v. Nielsen*,
291 F. Supp. 3d 260 (E.D.N.Y. 2018) ...........................................................................9

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*,
239 U.S. 441 (1915)........................................................................................................9

*Brown v. Gardner*,
513 U.S. 115 (1994)........................................................................................................6

*City & Cnty. of S.F. v. EPA*,
604 U.S. 334 (2025)........................................................................................................5

*In re Coughlin*,
33 F.4th 600 (1st Cir. 2022)...........................................................................................4

*de Rodriquez v. Hyde*,
2026 WL 220416 (D. Mass. Jan. 28, 2026) ...................................................................8

*DHS v. Regents of the Univ. of Calif.*,
591 U.S. 1 (2020)........................................................................................................6, 7

*Garcia-Rubiera v. Fortuno*,
665 F.3d 261 (1st Cir. 2011)...........................................................................................9

*Hill v. Dep't of Interior*,
151 F.4th 420 (D.C. Cir. 2025)........................................................................................9

*Ky. Dep't of Corr. v. Thompson*,
490 U.S. 454 (1989)590 .................................................................................................8

*Lackey v. Stinnie*,
604 U.S. 192 (2025).........................................................................................................1

*Lamie v. U.S. Tr.*,
540 U.S. 526 (2004).........................................................................................................3

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)........................................................................................................5

*Louisiana v. U.S. Dep't of Energy*,
90 F.4th 461 (5th Cir. 2024) ................................................................6

*Mansor v. USCIS*,
2025 WL 4274509 (W.D. Wash. Dec. 1, 2025), *amended*, 824 F. Supp. 3d
1155 (W.D. Wash. 2026) ................................................................8

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)................................................................7

*Mullin v. Doe*,
609 U.S. ___,146 S. Ct. 2121 (2026)................................................4, 5, 7, 10

*Nat'l Ass'n of Broadcasters v. FCC*,
39 F.4th 817 (D.C. Cir. 2022) ................................................................1

*Nozzi v. Hous. Auth. of City of L.A.*,
806 F.3d 1178 (9th Cir. 2015) ................................................................9

*Portillo-Rendon v. Holder*,
662 F.3d 815 (7th Cir. 2011) ................................................................8

*Rea v. Matteucci*,
121 F.3d 483 (9th Cir. 1997) ................................................................10

*Rombot v. Souza*,
296 F. Supp. 3d 383 (D. Mass. 2017) ................................................................8

*Sackett v. EPA*,
598 U.S. 651 (2023)................................................................5

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944)................................................................6

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)................................................................6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)................................................................6

*United States v. 1.04 Acres of Land*,
538 F. Supp. 2d 995 (S.D. Tex. 2008) ................................................................3

*United States. v. Fla. E. Coast Ry.*,
410 U.S. 224 (1973)................................................................9

*United States v. L.A. Tucker Truck Lines, Inc.*,
344 U.S. 33 (1952)................................................................5

*United States v. Rubalcava Gonzales*,
   179 F. Supp. 3d 917 (E.D. Mo. 2016)................................................................................3

*Washington v. Trump*,
   847 F.3d 1151 (9th Cir. 2017) .........................................................................................9

*Webster v. Doe*,
   486 U.S. 592 (1988).......................................................................................................10

*Webster v. Fall*,
   266 U.S. 507 (1925).........................................................................................................5

**Statutes**

5 U.S.C. § 706..........................................................................................................................6

6 U.S.C. § 552(d) .....................................................................................................................4

6 U.S.C. § 557 ..........................................................................................................................4

8 U.S.C. § 1103(a) ............................................................................................................2, 3, 4

8 U.S.C. § 1103(g) ....................................................................................................2, 3, 4, 5, 6

8 U.S.C. § 1254a ...................................................................................................................2, 9

8 U.S.C. § 1532 ........................................................................................................................3

8 U.S.C. § 1533(a) ...................................................................................................................3

**Other Authorities**

8 C.F.R. § 244.1 .......................................................................................................................9

**INTRODUCTION**

Defendants call Plaintiffs' *ultra vires* claim "unserious"—but that better describes Defendants' opposition, which fails to cite *any* statutory provision showing that TPS termination authority was actually transferred to the DHS Secretary. Instead, Defendants point to a provision (8 U.S.C. § 1103(g)) that vests authority in the *Attorney General* and that neither the Defendants nor any court has previously cited as the basis for the Secretary's TPS authority. Defendants' theory is not only brand new, it is at war with the statutory text and would mean that only immigration powers related to the Executive Office of Immigration Review ("EOIR") remained with the Attorney General after DHS's creation—when in fact the Attorney General *still* exercises *non*-EOIR immigration duties to this day.

Defendants attack Plaintiffs' due process claim by saying it just "repackage[s]" their original statutory claims—ignoring that the due process claim is much narrower and grounded in core constitutional protections, like the notice requirement. And Defendants *concede* that "a failure to abide by statutory procedural requirements" violates due process "if those requirements encompass[]" due process protections. That is exactly what Plaintiffs allege.

Plaintiffs are likely to succeed on their new claims, and the remaining factors—including the irreparable harm that Plaintiffs will face if the TPS termination becomes effective—still overwhelmingly favor relief. This Court should grant Plaintiffs' renewed postponement motion.

**ARGUMENT**

**I.    Defendants Have Cited No Statutory Provision Vesting TPS Termination Authority in the DHS Secretary**

Statutory interpretation "begin[s]" and almost always ends "with the text." *Lackey v. Stinnie*, 604 U.S. 192, 199 (2025). And Defendants have the burden to "identify statutory authority" for the action they have purported to take. *Nat'l Ass'n of Broadcasters v. FCC*, 39 F.4th

817, 819 (D.C. Cir. 2022). Defendants rely on just three statutory provisions, but none of them actually transfers TPS termination authority from the Attorney General to the Secretary.

**8 U.S.C. § 1103(a).** Defendants begin (at 8) with section 1103(a), which offers them no help. Through its "except" clause, section 1103(a) reserves to the Attorney General all "powers, functions, and duties conferred upon the … Attorney General" to the extent they concern "chapter" 12 of title 8 of the U.S. Code or "all other laws relating to the immigration and naturalization of aliens." TPS termination authority clearly falls into the category of those "powers, functions, and duties" reserved to the Attorney General because it was expressly vested in the Attorney General specifically (and not, for example, a DOJ sub-agency like the U.S. Immigration and Naturalization Service), and because it is housed within "chapter" 12 of Title 8 of the U.S. Code (in addition to being immigration-related). *See* 8 U.S.C. § 1254a. So on its face, section 1103(a) confirms that TPS termination authority remained with the Attorney General following DHS's creation.

**8 U.S.C. § 1103(g).** Because section 1103(a) undermines any theory that TPS authority was transferred, Defendants quickly turn (at 8) to section 1103(g), which states that the Attorney General shall retain the "authorities and functions" "exercised" by the EOIR or by the Attorney General with respect to EOIR. Defendants argue that section 1103(g) limits section 1103(a) such that the *only* immigration-related powers that remained with the Attorney General after the Act's passage were those exercised by EOIR. But that interpretation—apparently contrived for the first time in response to Plaintiffs' claims—has fatal defects and cannot be squared with the statute.

*First*, Defendants' theory—unlike Plaintiffs'—requires adding words to the statute. For example, Defendants read section 1103(g) as being exhaustive—*i.e.*, setting forth the *only* immigration-related powers that were reserved to the Attorney General—but section 1103(g) does not include the word "only" or any comparable language. Similarly, Defendants read section

2

1103(a)'s "except" clause as including a cross-reference to section 1103(g). *See* ECF 84 at 8 (asserting that section 1103(a) "specifies" that the powers reserved to the Attorney General are those in section 1103(g)). But no such cross-reference exists. A theory that requires rewriting the statute it interprets is surely wrong. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (declining to "read an absent word into the statute").

 *Second*, Defendants' view requires accepting that the "authorities and functions" tied to EOIR were the only immigration-related powers that remained with the Attorney General when DHS was created, but that is easily refuted. For example, through the Antiterrorism and Effective Death Penalty Act of 1996, Congress established an alien terrorist removal court that is comprised of Article III district court judges selected by the Chief Justice; it entirely bypasses EOIR. *See* 8 U.S.C. § 1532. Under the statute, only the "Attorney General" may initiate removal proceedings "by filing an application with the removal court." 8 U.S.C. § 1533(a)(1). And just weeks ago, it was the Attorney General who filed a high-profile "application to remove" an "alien terrorist" in order to commence removal proceedings in the court.[1] Under Defendants' theory, only the DHS Secretary had authority to file that application. This is hardly the only example of non-EOIR immigration powers that remained with the Attorney General after DHS's creation. *See, e.g.*, *United States v. Rubalcava Gonzales*, 179 F. Supp. 3d 917, 929 (E.D. Mo. 2016) (directing denaturalization certificate to Attorney General per 8 U.S.C. § 1451(f)); *United States v. 1.04 Acres of Land, More or Less, Situate in Cameron County*, 538 F. Supp. 2d 995, 997 (S.D. Tex. 2008) (noting Attorney General's exercise of land acquisition authorities under 8 U.S.C. § 1103(b)).

---

[1] *See* DOJ, Office of Public Affairs, *Department of Justice Files First Case in U.S. Alien Terrorist Removal Court to Deport Afghan Alien Who Supported Her Family's Plans for Election-Day Shooting* (July 30, 2026), https://perma.cc/2CXR-BXFN.

3

*Third,* Defendants' theory creates surplusage, because in their view section 1103(a)'s reservation of powers for the Attorney General is the *exact same* reservation of powers contained in section 1103(g). Plaintiffs' reading of the statute gives independent meaning to both of those provisions: Section 1103(a) is a broad reservation of immigration-related powers vested in the *Attorney General specifically*, while section 1103(g) is a narrower provision focused on ensuring that powers exercised by the *EOIR* remain with DOJ. There is one minor redundancy under that reading because section 1103(g) as an aside also reserves powers exercised "by the Attorney General with respect to" the EOIR. But redundancies are common in statutes to clarify meaning or as a "belt-and-suspenders" approach. *See In re Coughlin*, 33 F.4th 600, 608–09 (1st Cir. 2022). That easily explains any minor overlap between sections 1103(a) and 1103(g) here.

**6 U.S.C. § 557**. This is the third statutory provision that Defendants cite as the basis for the Secretary's authority. But Defendants acknowledge that it is just a "reference-updating" provision, which "operated to update all other federal laws *with respect to functions that were transferred to the Secretary under the Act*." ECF 84 at 9 (emphasis added). In other words, for functions that were *not* transferred—like TPS termination authority—section 557 does not apply.

**Mullin and Other Judicial Decisions**. Defendants say that *Mullin* forecloses the *ultra vires* claim, but they point to no evidence that the parties ever presented—or that the Court ever considered—the question whether the authority to terminate a TPS designation is vested exclusively in the Attorney General. When interpreting the scope of the TPS statute's review bar, the Supreme Court focused on the word "determination," *see Mullin v. Doe*, 609 U.S. \_\_\_, 146 S. Ct. 2121, 2134–37 (2026), not the review bar's "Attorney General" language (which appears nowhere in the opinion). Defendants make much (at 9) of *Mullin*'s reference in the background section to 6 U.S.C. §§ 552(d) and 557, but again, those are just housekeeping provisions. The

4

Supreme Court made no mention of 8 U.S.C. § 1103(a) or (g), the provisions where Defendants now hang their hat.

Because Plaintiffs' claim was not presented to or considered by the Supreme Court, the *Mullin* decision is subject to the principle (applied consistently for more than a century) that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925); *see also United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (where issue is not "raised in briefs or argument nor discussed in the opinion of the Court," "the case is not a binding precedent on this point"); ECF 73 at 13. Defendants entirely ignore that doctrine. They also ignore *Mullin* itself, which confirmed that the Supreme Court's interim ruling was merely "predictive" rather than "final," and thus subject to new arguments. 146 S. Ct. at 2137.

Defendants cite (at 10) other judicial decisions that have remarked on the DHS Secretary's TPS authority in passing. But none of those decisions addressed the *ultra vires* issue that Plaintiffs now raise, so they are all non-precedential as to that issue under *Webster v. Fall* and like cases. Even worse for Defendants, none of the cases they cite relies on section 1103(g)—the linchpin in Defendants' recently spun theory.

**DHS's Own Practice and Interpretations.** Defendants fall back on their own practice and understanding that TPS authority is vested in DHS, but that counts for close to nothing because "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024). Indeed,

courts routinely reject agencies' long-held—and mistaken—statutory interpretations.[2] Nor are Defendants entitled to *Skidmore* deference because their new interpretive theory grounded in section 1103(g) is not "consisten[t] with earlier … pronouncements" or otherwise persuasive. *See Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944).

**Plaintiffs' Claim Is Not "Self-Defeating."** Plaintiffs' *ultra vires* claim is not "self-defeating" for at least three reasons. ECF 84 at 11.

*First*, Plaintiffs' claim is brought under the APA and challenges a single final agency action: the TPS *termination* decision for Ethiopia. *See* Am. Compl. ¶¶ 265–86. If Plaintiffs prevail on that claim, this Court is authorized under the APA to "set aside" *only that particular* agency action. 5 U.S.C. § 706(2). Article III similarly "restricts" this Court's jurisdiction to relief that redresses the particular "executive action" that has caused Plaintiffs' injuries. *See, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Any challenge to Ethiopia's TPS *designation* would need to be the subject of a separate lawsuit of doubtful justiciability. In Defendants' view, this is all just "remedial hyper-formalism." ECF 84 at 11. To the contrary, these jurisdictional principles are central to our constitutional structure. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422 (2021) (relating Article III standing to "separation of powers" (citation omitted)).

*Second*, if the Executive Branch were at any point to rescind TPS status for Ethiopian TPS holders on the basis that their TPS status was unlawful, that rescission would constitute a new agency action that would be subject to the APA and further review in the courts. *See, e.g.*, *DHS v. Regents of the Univ. of Calif.*, 591 U.S. 1, 24–28 (2020); *see also Louisiana v. United States Dep't of Energy*, 90 F.4th 461, 476 (5th Cir. 2024) (explaining *Regents* "held that even when an agency

---

[2] *See, e.g.*, *Sackett v. EPA*, 598 U.S. 651, 679 (2023) (rejecting EPA's decades old interpretation); *City & Cnty. of S.F. v. EPA*, 604 U.S. 334, 355–57 (2025) (same for FCC interpretation); *Brown v. Gardner*, 513 U.S. 115, 122 (1994) (same for Department of Veteran Affairs interpretation).

6

determines that its previous decision was illegal, it still must go on to consider alternatives to simply revoking the prior action"). Defendants press (at 11) a crabbed reading of *Regents*, suggesting it was limited to scenarios where the government determines that a program is unlawful only in part. But *Regents* made clear that even "illegal" programs must be "wound down" in a way that considers "reliance interests" and is otherwise consistent with the APA. 591 U.S. at 13, 25, 30. In any event, the Executive Branch very well could identify a separate basis for authority for a TPS designation—or conclude that at least *part* of the TPS program is independently authorized on other grounds—rather than rescinding it *in toto*. *See Mullin*, 146 S. Ct. at 2128 (explaining that, prior to TPS statute's enactment, "the Executive Branch sometimes provided similar relief as a matter of discretion without any express statutory authorization"). The availability of those alternatives places any future TPS rescission squarely within the *Regents* framework.

*Third*, procedural due process would apply to any rescission. *See infra* section II.

## II.    Defendants Mischaracterize Plaintiffs' Due Process Claim and Ignore Key Precedents

**Plaintiffs' Claims Are Doctrinally Sound and Not "Repackaged."** Defendants argue that Plaintiffs' due process claim fails because it "turn[s] exclusively on statutory procedural requirements," and therefore simply "relabels" or "repackage[s]" Plaintiffs' original statutory claims. ECF 84 at 14–15. Those contentions rest on a basic mischaracterization. Plaintiffs' due process claim is not based solely on the existence of the TPS statute, nor do Plaintiffs maintain that *every* TPS statutory violation would constitute a due process violation. Plaintiffs allege only that a core set of procedures mandated by the TPS statute are *independently* required under the Due Process Clause. Am. Compl. ¶¶ 259–64. For example, the notice requirement is a foundational procedural safeguard that is required both by the Due Process Clause and by the TPS statute (in the form of a Federal Register notice), such that a violation of the statutory requirement to publish

7

the basis for a TPS termination decision *independently* violates due process. ECF 73 at 17; *see Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (holding that notice is a "fundamental requirement of due process" and "must … reasonably … convey the required information").

Courts have recognized materially identical due process violations based on overlapping statutory and regulatory violations, including in the TPS and immigration contexts. *See, e.g.*, *Mansor v. USCIS*, 2025 WL 4274509, at *8 (W.D. Wash. Dec. 1, 2025), *amended*, 824 F. Supp. 3d 1155 (W.D. Wash. 2026) (holding at summary judgment that government violated TPS applicants' procedural due process rights by failing to issue work authorization in violation of the statutory requirements); *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (violation of ICE regulation constituted due process violation); *de Rodriquez v. Hyde*, 2026 WL 220416, at *4 (D. Mass. Jan. 28, 2026) (similar). And Defendants concede that "a failure to abide by statutory procedural requirements would … amount to a due process violation if those requirements … were coextensive with the demands of the Due Process Clause." ECF 84 at 16. That is exactly what Plaintiffs allege.[3]

**Once Conferred, TPS Status and Benefits Are Not Discretionary.** Defendants next argue (at 17–18) that Plaintiffs lack a property or liberty interest in their TPS status because the extension of that status is wholly discretionary. But that misreads the TPS statute, which (applying Defendants' own standard) "mandat[es] the outcome to be reached upon a finding that the relevant

---

[3] Defendants (at 16) misread *Portillo-Rendon v. Holder*, 662 F.3d 815 (7th Cir. 2011), which reasoned that a court should resolve a case on statutory procedural grounds if it is possible to do so without reaching the constitutional due process question. *See id.* at 817. But after *Mullin*, the constitutional question is central. Defendants also misconstrue *Adame v. Holder*, 762 F.3d 667 (7th Cir. 2014), which did not hold that violating a statute could never independently violate due process, and instead confirmed that "statutorily required procedures assure compliance with constitutional due process requirements." *Id.* at 672.

8

criteria have been met." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989). For example, the provision of removal protection and work authorization are mandatory once a country has been designated for TPS and an applicant makes a prima facie showing of eligibility. *See* 8 U.S.C. §§ 1254a(a)(1)(A)–(B), 1254a(a)(4)(B); 8 C.F.R. § 244.1. And once a TPS designation is effective, it is automatically binding until the deciding official issues a constitutionally valid termination that is based on statutory criteria. *See* 8 U.S.C. § 1254a(b). So while the initial TPS designation is discretionary, there is no discretion on the back end. TPS status, and its attendant benefits, can only be terminated if, and only if, the conditions are no longer met.

**Procedural Due Process Applies to Group-Based Determinations.** Defendants contend (at 14–15) that procedural due process applies only to individualized determinations, but courts have applied procedural due process protections to determinations that affect large groups of people at once.[4] Further, "legislative and adjudicative action for purposes of procedural due process analysis is not always easy to draw," and "not all government actions fall neatly into these polar categories." *Garcia-Rubiera v. Fortuno*, 665 F.3d 261, 274 (1st Cir. 2011). TPS termination is closer to the adjudicative side of the spectrum because it involves the application of statutory criteria and deprives a defined class of current TPS holders of previously conferred benefits—a far cry from the prospective, generally applicable rules at issue in *Bi-Metallic Investment Company v. State Board of Equalization*, 239 U.S. 441, 445 (1915), and *United States. v. Florida East Coast Railway Co.*, 410 U.S. 224, 245–46 (1973). Even if a TPS termination were considered legislative, courts recognize "defects in the legislative process" as an exception to the general principle that

---

[4] *See, e.g.*, *Washington v. Trump*, 847 F.3d 1151, 1164–65 (9th Cir. 2017) (procedural due process challenge to travel ban Executive Order); *Batalla Vidal v. Nielsen*, 291 F. Supp. 3d 260, 283–85 (E.D.N.Y. 2018) (procedural due process challenge to DACA program rescission); *Nozzi v. Hous. Auth. of L.A.*, 806 F.3d 1178, 1191–99 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Jan. 29, 2016) (procedural due process challenge to Section 8 housing vouchers).

legislative actions are not subject to due process protections. *Hill v. U.S. Dep't of Interior*, 151 F.4th 420, 434 (D.C. Cir. 2025); *Rea v. Matteucci*, 121 F.3d 483, 485 (9th Cir. 1997).[5]

### III.    The Remaining Factors Overwhelmingly Favor Plaintiffs

This Court has already found that the termination of Ethiopia's TPS designation would inflict irreparable harm because Plaintiffs would lose work authorization, lawful status-related benefits, and protection from removal to a dangerous country. *See* ECF 56 at 25–28. Defendants offer no new evidence that would undermine those findings and instead recycle arguments that this Court has already rejected. Defendants' irreparable harm arguments ring particularly hollow given the claims that Plaintiffs now advance. For example, Defendants claim (at 18–19) that the harms Plaintiffs may face "inhere in the statutory scheme that Congress designed" and that in "the former Secretary's … judgment," Ethiopian nationals may now "safely return." But Plaintiffs contend that the TPS termination was issued *contrary* to the TPS statute and that the Secretary had no authority to render any "judgment[s]" with respect to the TPS termination in the first place.

The equities and the public interest (which merge here) also continue to favor Plaintiffs. It remains true that the public has an "important interest" in ensuring that federal agencies comply with statutory and constitutional limits on their authority. ECF 56 at 29 (collecting authority). And here, Plaintiffs claim that Defendants have transgressed some of the most basic constraints that our system of limited government imposes upon federal agencies. Interim relief is warranted.

### CONCLUSION

The Court should grant Plaintiffs' renewed postponement motion.

---

[5] Defendants admit (at 13) that *Mullin* did not hold that the TPS review bar applies to constitutional claims, yet urge this Court to hold that Plaintiffs' due process claim is precluded nonetheless. The Court should not take that step. As *Mullin* reiterated, "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." 146 S. Ct. at 2137 (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)). No such clear intent exists here.

10

Dated: August 3, 2026

Respectfully Submitted,

*/s/ Joy Chen*
Joy Chen (BBO No. 714192)
COVINGTON & BURLING LLP
One International Place
Suite 1020
Boston, MA 02110-2627
(617) 603-8821
JChen@cov.com

*/s/ Paul Killebrew*
Mark H. Lynch (*pro hac vice*)
Stephen Petkis (*pro hac vice*)
Daniel G. Randolph (*pro hac vice*)
Paul Killebrew (*pro hac vice*)
Ayana M. Lindsey (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001
(202) 662-6000
MLynch@cov.com
SPetkis@cov.com
DRandolph@cov.com
PKillebrew@cov.com
ALindsey@cov.com

*/s/ Sarah Leadem*
Sarah Leadem (*pro hac vice*)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
SLeadem@cov.com

*/s/ Nargis Aslami*
Nargis Aslami (BBO No. 714848)
Melissa Keaney (*pro hac vice*)
Collin Poirot (*pro hac vice*)
Abbey Rutherford (*pro hac vice*)
MUSLIM ADVOCATES
1032 15th Street N.W. #362
Washington, D.C. 20005
(202) 897-2622
Nargis@muslimadvocates.org

11

Melissa@muslimadvocates.org
Collin@muslimadvocates.org
Abbey@muslimadvocates.org

*/s/ Erik Crew*
Erik Crew (*pro hac vice*)
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
(949) 603-7411
ecrew@haitianbridge.org

*Counsel for Plaintiffs African Communities*
*Together, Samuel Doe, Stephen Doe, Abal Doe, and*
*the Proposed Class*

12

**<u>CERTIFICATE OF SERVICE</u>**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Paul Killebrew*
Paul Killebrew

13