**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **AFRICAN COMMUNITIES TOGETHER, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**MARKWAYNE MULLIN, et al.,**<br><br>**Defendants.** | **Civil Action No. 26-10278-BEM** |

**MEMORANDUM AND ORDER ON**
**PLAINTIFFS' MOTION FOR POSTPONEMENT OF AGENCY ACTION**
**AND DEFENDANTS' MOTION TO DISMISS**

**MURPHY, J.**

After the Secretary of the Department of Homeland Security terminated Ethiopia's Temporary Protected Status ("TPS") designation, Plaintiffs African Communities Together, Samuel Doe, Stephen Doe, and Abal Doe (together, "Plaintiffs") brought suit against then-Secretary of the Department of Homeland Security Kristi Noem ("the Secretary"), the Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services ("USCIS"), and the United States (together, "Defendants"), alleging various constitutional and Administrative Procedure Act ("APA") violations.[1] This Court granted Plaintiffs' emergency motion to postpone the effective date of the TPS termination, which was ultimately reversed and remanded in light of the Supreme Court's ruling in two closely related cases. Before the Court

[1] The Court granted Plaintiffs' motion for leave to proceed under pseudonyms. *See* Dkts. 4, 31. Note that Markwayne Mullin, the current Secretary of the Department of Homeland Security ("DHS"), "is automatically substituted as a party" in place of former Secretary Kristi Noem. Fed. R. Civ. P. 25(d). For the sake of brevity, the Court refers to the Secretary of DHS as "the Secretary" throughout.

now is Defendants' motion to dismiss Plaintiffs' amended complaint, and Plaintiffs' renewed motion to postpone the termination based on two new claims added to the amended complaint: an ultra vires claim and a procedural due process claim. For the reasons set forth below, the Court will deny Defendants' motion to dismiss as to Plaintiffs' equal protection claim and grant the motion as to the remaining claim and deny Plaintiffs' motion to postpone.

## I. **Background**

Briefly, by way of background, Congress created the TPS program in 1990, under which "noncitizens from designated countries may apply for work authorization and temporary protection against removal." *Afr. Cmtys. Together v. Noem* (*ACT I*), 828 F. Supp. 3d 235, 243 (D. Mass. 2026) (internal quotation marks omitted), *rev'd and remanded sub nom.*, *Afr. Cmtys. Together v. Mullin*, 2026 WL 2185871 (1st Cir. July 29, 2026). Ethiopia was first designated for TPS on December 12, 2022, in recognition that "Ethiopia faces armed conflict in multiple regions of the country resulting in large-scale displacement" and "severe climatic shocks exacerbating humanitarian concerns over access to food, water, and healthcare." Designation of Ethiopia for Temporary Protected Status, 87 Fed. Reg. 76074, 76075–76 (Dec. 12, 2022). On December 15, 2025, the Secretary terminated Ethiopia's TPS designation, effective February 13, 2026. *See* Termination of the Designation of Ethiopia for Temporary Protected Status, 90 Fed. Reg. 58028, 58028 (Dec. 15, 2025).[2]

On January 22, 2026, Plaintiffs brought suit, arguing that the Secretary's termination violated the APA and the Fifth Amendment Equal Protection Clause. *See generally* Dkt. 1. Three days later, Plaintiffs moved on an emergency basis for an administrative stay, production of the

[2] Detailed information about the TPS program and the designation, redesignation, extension, and termination of TPS for Ethiopia is set out in *ACT I*, 828 F. Supp. 3d at 243–44.

certified administrative record, and postponement of the February 13 effective date of termination under section 705 of the APA. Dkt. 14; *see also* Dkt. 15. The Court granted an administrative stay to preserve the status quo while considering the merits of Plaintiffs' motion to postpone. Dkt. 36. On April 8, 2026, the Court granted Plaintiffs' motion to postpone the termination, finding that Plaintiffs were likely to succeed on the merits of two claims: that the Secretary failed to consult with appropriate agencies before terminating Ethiopia's TPS designation and that the Secretary's reasons for terminating the program were pretextual.[3] Dkt. 56 (the "April 8 Order"). Defendants appealed the April 8 Order to the First Circuit. Dkts. 57–58.

When the Supreme Court granted the petitions for certiorari before judgment in two related cases, *see Noem v. Doe*, 146 S. Ct. 1803 (2026) (Mem); *Trump v. Miot*, 146 S. Ct. 1802 (2026) (Mem), this Court granted the parties' joint motion to hold the proceedings in abeyance pending the Supreme Court's ruling, Dkt. 61. On June 25, 2026, in *Mullin v. Doe*, the Supreme Court reversed the lower court rulings at issue, holding that "the TPS statute's judicial-review bar applies to all non-constitutional claims" challenging determinations underlying termination of a TPS designation, and concluding that Plaintiffs were unlikely to succeed on the merits of their equal protection claim. 609 U.S. ----, 146 S. Ct. 2121, 2137, 2140 (2026).

On June 29, 2026, Defendants moved this Court to lift the abeyance and issue an indicative ruling or, in the alternative, stay the Court's April 8 Order pending appeal. Dkt. 67. On July 13, 2026, Plaintiffs filed an amended complaint adding a procedural due process claim and an ultra vires claim, Dkt. 71 ¶¶ 240–86, and filed a renewed emergency motion for an administrative stay and to postpone the effective date of the termination, Dkt. 72; *see also* Dkt. 73. On July 22, 2026,

[3] The Court did not reach Plaintiffs' constitutional claims or other APA claims. *See ACT I*, 828 F. Supp. 3d at 257 ("Having determined that Plaintiffs are likely to succeed on the merits of two of their claims, the Court need not address the merits of the remaining claims.").

Plaintiffs filed an emergency motion for an administrative stay, Dkt. 78, in anticipation of the First Circuit reversing and remanding the April 8 Order in light of *Mullin*, which the Court granted, effective upon receipt of the First Circuit's mandate, to preserve the status quo while evaluating Plaintiffs' renewed motion to postpone, Dkt. 82. On July 27, 2026, Defendants moved to dismiss for lack of jurisdiction and failure to state a claim. Dkt. 85; *see also* Dkt. 86.

On July 29, 2026, the First Circuit reversed the April 8 Order and remanded the case. Dkt. 91. The First Circuit issued mandate that same day, Dkt. 92, at which point the Court's administrative stay went into effect, *see* Dkt. 82. The Court held a hearing on the three pending motions on August 14, 2026, at which the Court denied as moot Defendants' motion to lift the abeyance and issue an indicative ruling or stay pending appeal. Dkt. 101. The Court took the other two motions under advisement.

## II. Legal Standard

### A. Motion to Dismiss

"When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor."[4] *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010) (citing *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)). The Court, however, may also look beyond the pleadings to any evidentiary materials submitted by the parties to determine whether it has jurisdiction. *Martínez-Rivera v. Puerto Rico*, 812 F.3d 69, 74 (1st Cir. 2016).

Courts analyzing claims under Rule 12(b)(6) must determine whether a plaintiff's factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on

[4] The Court notes that neither provision that Defendants argue bars review of Plaintiffs' claims, 8 U.S.C. § 1254a(b)(5)(A) or 8 U.S.C. § 1252(f)(1), implicates subject-matter jurisdiction. Therefore, neither gives rise to dismissal under Rule 12(b)(1). *See ACT I*, 828 F. Supp. 3d at 246 n.14, 260 & n.34.

its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making its determination, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). At the pleading stage, plaintiffs need not demonstrate that they are likely to prevail, but "[their] claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *García-Catalán v. United States*, 734 F.3d 100, 102–03 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice," *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)), "but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint," *id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

**B. <u>Motion to Postpone</u>**

The APA authorizes courts to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending" judicial review. 5 U.S.C. § 705. Such preliminary relief "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The same standard that governs the issuance of a stay under § 705 is the standard that governs the issuance of a preliminary injunction." *California v. Kennedy*, 802 F. Supp. 3d 273, 281 (D. Mass. 2025). "It is warranted only when the moving party demonstrates that 1) he is likely to succeed on the merits of his case, 2) he is likely to suffer irreparable harm in the absence of injunctive relief, 3) the 'balance of equities' favor him and 4) [preliminary relief] is in the public interest." *Id.* (quoting *New Jersey v. Trump*, 131 F.4th 27, 33 (1st Cir. 2025)).

When reviewing a motion for preliminary relief, "[t]he court may accept as true 'well-pleaded allegations [in the complaint] and uncontroverted affidavits.'" *C&W Facility Servs. Inc. v. Mercado*, 2018 WL 4854630, at *2 (D. Mass. Oct. 5, 2018) (alteration in original) (quoting *Rohm & Haas Elec. Materials, LLC v. Elec. Cirs. Supplies, Inc.*, 759 F. Supp. 2d 110, 114 n.2 (D. Mass. 2010)). "The Court may also rely on otherwise inadmissible evidence, including hearsay," *Bos. Taxi Owners Ass'n v. City of Boston*, 84 F. Supp. 3d 72, 78 (D. Mass. 2015) (citing *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)), and take judicial notice of information on official government websites, *see, e.g.*, *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (relying on the contents of a government agency's website).

## III. Discussion

The Court has before it Defendants' motion to dismiss and Plaintiffs' emergency motion to postpone. Granting Defendants' motion to dismiss could moot Plaintiffs' motion in part or in full. Accordingly, the Court will first address Defendants' motion and then, as necessary, turn to Plaintiffs' motion to postpone.

### A. Motion to Dismiss

#### 1. Count VIII: Ultra Vires

Plaintiffs argue that the Secretary acted ultra vires when terminating Ethiopia's TPS designation, because Congress vested that authority in the Attorney General when Congress established TPS in 1990, and never transferred it to the Secretary. *See* Dkt. 100 at 16–24. Defendants argue that, as a threshold matter, Plaintiffs' ultra vires claim is unreviewable in light of the Supreme Court's statement in *Mullin* that 8 U.S.C. § 1254a(b)(5)(A) ("section 1254a(b)(5)(A)"), "applies to all non-constitutional claims." Dkt. 86 at 8 (quoting 146 S. Ct. at 2137); *see also* 8 U.S.C. § 1254a(b)(5)(A) ("There is no judicial review of any determination of the Attorney General with respect to the designation, or termination or extension of a designation,

of a foreign state under this subsection."). However, as another court addressing a similar challenge recently explained:

> In stating that the jurisdictional bar applied to all nonconstitutional claims, the Supreme Court assumed the undisputed premise that the jurisdictional bar, whatever its scope, applied to the Secretary's determinations. If the plaintiffs' reading is correct, then the jurisdictional bar applies only to "determination[s] of the Attorney General," not to determinations by the Secretary, and does not preclude their claims in this case. Of course, if the plaintiffs' reading is wrong, then the jurisdictional bar does apply. The jurisdictional issue is intertwined with the merits of the statutory interpretation issue, and the default rule in situations of intertwinement is to proceed to the merits.[5]

*Doe v. Mullin*, 2026 WL 2279577, at *6 (N.D. Ill. Aug. 7, 2026) (citing *Perttu v. Richards*, 605 U.S. 460, 472–74 (2025); *Land v. Dollar*, 330 U.S. 731, 739 (1947); *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

Accordingly, the Court will proceed to the merits. When Congress first established the TPS program in 1990, 8 U.S.C. § 1103(a) stated:

> The Attorney General shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers.

8 U.S.C. § 1103(a) (1994). In 2003, however, Congress created the Department of Homeland Security, *see* Homeland Security Act of 2002, Pub. L. No. 107-296, § 1517, 116 Stat. 2135 (2003) (codified at 6 U.S.C. § 101 et seq.), and directed that:

> [t]he Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, *except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the* President, *Attorney General*, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers.

[5] As noted above, section 1254a(b)(5)(A) does not implicate jurisdiction "in the strictest sense of that word." *ACT I*, 828 F. Supp. 3d at 246 n.14; *see supra* note 4.

8 U.S.C. § 1103(a)(1) ("section 1103(a)(1)") (emphases added).[6] Congress also added a new subsection to that same section, specifying that

> [t]he Attorney General shall have such authorities and functions under this chapter and all other laws relating to the immigration and naturalization of aliens as were exercised by the Executive Office for Immigration Review, or by the Attorney General with respect to the Executive Office for Immigration Review, on the day before the effective date of the Immigration Reform, Accountability and Security Enhancement Act of 2002.

*Id.* § 1103(g)(1) ("section 1103(g)(1)").

Defendants argue that, pursuant to section 1103(g)(1), the Attorney General retained only the functions that "pertain to those previously exercised by the Executive Office for Immigration Review (EOIR)," and that because "EOIR did not previously administer the TPS statute . . . the Attorney General did not retain such functions, which have been transferred to the Secretary." Dkt. 86 at 27. If section 1103(a)(1) "reserved to the Attorney General *all* functions that the Attorney General previously exercised, then § 1103(g) would prove redundant." *Id.* (emphasis in original).

Plaintiffs, by contrast, argue that section 1103(a)(1) carved out all functions that the Attorney General previously exercised from the transfer of the administration of "laws relating to the immigration and naturalization of aliens" to the Secretary. Dkt. 100 at 17–18. Plaintiffs emphasize that the Attorney General continues to exercise immigration-related functions not related to the EOIR, like initiating removal proceedings in the alien terrorist removal court

---

[6] As part of the Homeland Security Act of 2002, Congress also enacted 6 U.S.C. §§ 552(d) and 557. "These sections are housekeeping provisions that ensure that statutory terms be construed as referring to the Department of Homeland Security wherever a substantive transfer of authority has occurred." *Afr. Cmtys. Together v. Mullin*, --- F. Supp. 3d ----, 2026 WL 2274504, at *3 n.2 (D. Mass. Aug. 7, 2026); *see also* 6 U.S.C. § 552(d) ("References relating to an agency that is transferred to the Department [of Homeland Security] . . . shall be deemed to refer, as appropriate, to the Department [of Homeland Security]."); *id.* § 557 ("With respect to any function transferred by or under this chapter . . . , reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary, other official, or component of the Department [of Homeland Security] to which such function is so transferred.").

established by the Antiterrorism and Effective Death Penalty Act of 1996, and that to disregard such evidence that Defendants' interpretation is flawed derogates the Court's "duty to construe statutes, not isolated provisions."[7] *Id.* at 18–19 (quoting *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290 (2010)).

The only courts to have squarely addressed this issue adopted Defendants' interpretation. *See Afr. Cmtys. Together v. Mullin*, --- F. Supp. 3d ----, 2026 WL 2274504, at *3 (D. Mass. Aug. 7, 2026) ("In the Court's view, the 'best reading' of § 1103 is the one initially espoused by Defendants.")[8]; *Doe*, 2026 WL 2279577, at *7 ("[T]he Court agrees with the government that the [Homeland Security Act], and subsequent amendments in 2003, transferred TPS authority to the Secretary."); *see also Afr. Cmtys. Together v. Mullin*, 2026 WL 2364398, at *12 (D. Mass. Aug. 14, 2026) (finding the plaintiffs unlikely to succeed on the merits of their ultra vires claim because "the Court conclude[d] that the Secretary was assigned the Attorney General's power to terminate TPS by the [Homeland Security Act] and subsequent reorganization").[9] For

[7] Plaintiffs also point to the "Attorney General's exercise of land acquisition authorities under 8 U.S.C. § 1103(b)," Dkt. 100 at 19 (citing *United States v. 1.04 Acres of Land, More or Less, Situate in Cameron Cnty.*, 538 F. Supp. 2d 995, 997 (S.D. Tex. 2008)), and the submission of orders cancelling certificates of naturalization to the Attorney General under 8 U.S.C. § 1451(f), *id.* (citing *United States v. Rubalcava Gonzales*, 179 F. Supp. 3d 917, 929 (E.D. Mo. 2016)).

[8] Though this cited case shares the same parties at those before this Court in the instant motion, the cited case was decided by another court in this District.

[9] *See also Nat'l TPS All. v. Noem*, No. 25-cv-05687, Dkt. 233 (N.D. Cal. Aug. 6, 2026) (denying without explanation via docket order the plaintiffs' motion to amend the complaint to add an ultra vires claim).

substantially the reasons set forth by those Courts, this Court agrees and therefore dismisses Count VIII.[10]

### 2. Counts VI and VII: Procedural Due Process

Plaintiffs allege that the termination of Ethiopia's TPS designation violated Plaintiffs' procedural due process rights. Dkt. 71 ¶¶ 240–64. Defendants first argue that Plaintiffs' claims are unreviewable pursuant to section 1254a(b)(5)(A), which states that "[t]here is no judicial review of *any* determination of the [Secretary] with respect to the designation, *or termination* or extension of a designation, of a foreign state" for TPS. *See* Dkt. 86 at 7 (alterations in original) (emphases in original) (quoting 8 U.S.C. § 1254a(b)(5)(A)). However, "the Supreme Court in *Mullin* assumed—based on the government's concession—that constitutional claims would still be reviewable under the TPS statute's jurisdictional bar, and this Court sees no reason to depart from that assumption." *Doe*, 2026 WL 2279577, at *9.

As to the merits, Defendants move to dismiss on the ground that Plaintiffs' amended complaint merely repackages the same non-constitutional procedural claims found unreviewable in *Mullin*. *See* Dkt. 86 at 8–10; *see also id.* at 9–10 (urging the Court to "look beyond the mere 'constitutional' label and recognize these claims for what they clearly are: challenges based on the Secretary's purported failure to adhere to *statutory* requirements" (emphasis in original)). Defendants further argue that the due process protections Plaintiffs invoke apply only to the

[10] The Court notes that it does not, however, rely on agency practice in reaching its conclusion. "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority," *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024), and may consider an administering agency's interpretation only to the extent it has the "power to persuade," *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Here, longstanding agency practice lacks such persuasive power, in light of some evidence that under either interpretation, certain tasks may have been carried out by the wrong official. *See* Dkt. 100 at 16–19 (arguing that under Plaintiffs' interpretation, the Secretary has no authority to terminate TPS designations, and that under Defendants' interpretation, the Attorney General is carrying out certain tasks properly transferred to the Secretary). However, "[t]hose specific issues are not before the Court." *Afr. Cmtys. Together v. Mullin*, 2026 WL 2274504, at *4 n.3.

adjudication of individuals' rights, not programmatic terminations like that of Ethiopia's TPS designation. *Id.* at 10–11. Defendants also contend that a failure to follow statutory procedures only equates to a constitutional due process violation when the statutory requirements "encompassed or were coextensive with the demands of the Due Process Clause itself," which is not the case in the TPS statute. *Id.* at 11–12. Finally, Defendants contend that Plaintiffs have not shown a liberty or property interest in the TPS program because the statute imposes only procedural, not substantive, limitations on the Secretary's decision to terminate, and an entitlement to procedure does not form the basis of a protected interest under the Due Process Clause. *Id.* at 13–14.

Plaintiffs counter that they have adequately plead a procedural due process claim based on their liberty and property interests in work authorization and protection from removal. Dkt. 100 at 24–26. Moreover, Plaintiffs argue, some of the statutory requirements they allege were violated overlap with the requirements of procedural due process. *Id.* at 26–27. Finally, Plaintiffs contend that the TPS termination was adjudicative and that "the line between legislative and adjudicative action for purposes of procedural due process analysis is not always easy to draw." *Id.* at 27–29 (quoting *Garcia-Rubiera v. Fortuño*, 665 F.3d 261, 274 (1st Cir. 2011)).

"A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate . . . process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023).

> [T]he requirements of due process vary with the particulars of the circumstance at issue. . . . At one end is legislative action. Where property is affected by generally-applicable legislative action, property owners are not entitled to notice above and beyond the notice provided by the enactment and publication of the statute. At the other end are individual adjudications, which require more specific procedures, as well as more specific notice.

*Garcia-Rubiera*, 665 F.3d at 272 (citations omitted). Even assuming that the work authorization and protection from removal provided to TPS-eligible individuals implicate protected liberty or property interests, *see, e.g.*, *Mansor v. U.S. Citizenship & Immigr. Servs.*, 685 F. Supp. 3d 1000, 1013 (W.D. Wash. 2023) ("[A] prima facie eligible TPS applicant has a property interest in temporary employment authorization subject to due process protections."), "Plaintiffs do not assert a denial of individual benefits under [Ethiopia's] TPS designation; rather, they bring a programmatic challenge against the termination of the designation altogether," *Afr. Cmtys. Together v. Mullin*, 2026 WL 2274504, at *5. Because "Plaintiffs' proposed procedural due process claim is closer to a challenge to a 'generally-applicable' agency action," *id.* (quoting *Garcia-Rubiera*, 665 F.3d at 272), minimal process is due, *see Harris v. Univ. of Mass., Lowell*, 557 F. Supp. 3d 304, 312 (D. Mass. 2021) ("Because the Vaccine Policy is generally applicable to all students and formulated prospectively toward the fall semester (i.e., a legislative rule rather than an adjudication), they are 'not entitled to [process] above and beyond the notice provided by the enactment and publication' of the Vaccine Policy itself." (quoting *Garcia-Rubiera*, 665 F.3d at 272)). Accordingly, Plaintiffs have failed to state a procedural due process claim upon which relief can be granted and Counts VI and VII are dismissed.

### 3. **Counts IV and V: Equal Protection**

Defendants next move to dismiss Plaintiffs' claim that the termination was motivated by racial or national origin animus and therefore violates the Fifth Amendment Equal Protection Clause. Dkt. 86 at 21–26. Defendants contend that rational-basis review governs, but that "[e]ven under heightened scrutiny" set forth in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, "Plaintiffs' minimal allegations fail to state a claim." Dkt. 86 at 23; *see also id.* ("Under *Arlington Heights*, to establish an equal protection claim, Plaintiffs would need to prove that a racially 'discriminatory purpose has been a motivating factor in the [government's]

decision.'" (alteration in original) (quoting 429 U.S. 252, 265–66 (1977))). The Court is unpersuaded.

Certainly, the Supreme Court found the plaintiffs unlikely to prevail on a similar equal protection claim in *Mullin*. 146 S. Ct. at 2140. However, as another court confronting this same question explained,

> the Supreme Court's decision in *Mullin* was decided under a likelihood of success standard based on only public statements. The Supreme Court did not decide that the plaintiffs had failed to state a plausible claim for relief. *It is hard to say that the statements here are not enough to get past the motion to dismiss stage and provide the plaintiffs with at least an opportunity to prove their case through discovery*. *Arlington Heights* calls for a "sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights*, 429 U.S. at 266. And based on the public statements here, it seems plausible that the plaintiffs could uncover evidence that might have changed the outcome in *Mullin*.

*Doe*, 2026 WL 2279577, at *11 (emphasis added) (citation omitted). For these same reasons, the Court finds that Plaintiffs have stated a claim sufficient to survive the motion to dismiss and are entitled to pursue their claim through discovery. Accordingly, Defendants' motion to dismiss Count V is denied.[11]

**4. <u>Counts I, II, and III</u>**

As to the remaining Counts, Plaintiffs do not oppose dismissal. *See* Dkt. 100 at 34. "If the Secretary possesses the authority to issue TPS designations and terminations," as the Court

[11] Plaintiffs argue in Count V that Defendants violated the Fifth Amendment Equal Protection Clause, but also argue in Count IV that Defendants violated 5 U.S.C. § 706(2)(B) of the APA by acting contrary to Plaintiffs' constitutional right to equal protection under the Fifth Amendment. *See* Dkt. 71 ¶¶ 228–39. The Court will grant Defendants' motion to dismiss as to Count IV because such claim is duplicative of Count V and appears barred from judicial review by *Mullin*. *See Afr. Cmtys. Together v. Mullin*, 2026 WL 2364398, at *11 (Two of the APA claims brought by the plaintiffs "allege that the termination violated constitutional due process and equal protection guarantees . . . and thus should be vacated pursuant to 5 U.S.C. § 706(2)(B). The Court concludes that because those claims rely on a statutory cause of action, albeit one that incorporates the Constitution as a source of law, the Court's jurisdiction over them is foreclosed by the Supreme Court's decision in *Mullin*." (citation omitted)).

concluded above, "Plaintiffs acknowledge that *Mullin* forecloses the review of those claims." *Id.* (citing *Mullin*, 146 S. Ct. at 2127).

**5. <u>Remedy</u>**

Finally, Defendants bill 8 U.S.C. § 1252(f)(1) ("section 1252(f)(1)"), as barring review of Plaintiffs' claims and giving rise to dismissal under Rule 12(b)(1). Dkt. 86 at 1, 14–15; *see also* 8 U.S.C. § 1252(f)(1) ("[N]o court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter."). However, as set forth in greater depth in *ACT I*, section 1252(f)(1) is a *remedial* limitation, rather than *jurisdictional*, and therefore does not implicate subject-matter jurisdiction, 828 F. Supp. 3d at 260–61; *see also Biden v. Texas*, 597 U.S. 785, 798, 801 (2022) (concluding that there is "no basis for the conclusion that section 1252(f)(1) concerns subject matter jurisdiction" and that the provision merely "withdraws a district court's 'jurisdiction or authority' to grant a particular form of relief"); *see also supra* note 4.

And, as previously explained, by both this Court and others, this provision, properly construed, does not preclude Plaintiffs' request for declaratory relief or vacatur. *See ACT I*, 828 F. Supp. 3d at 260 ("Even assuming arguendo that 'the provisions of part IV of this subchapter' captures the TPS statute . . . section 1252(f)(1) presents no bar to Plaintiffs' claims because Plaintiffs do not seek 'to enjoin or restrain the operation of' the TPS statute."); *Brito v. Garland*, 22 F.4th 240, 252 (1st Cir. 2021) ("[D]eclaratory relief remains available under section 1252(f)(1)."); *Afr. Cmtys. Together v. Noem*, 820 F. Supp. 3d 48, 65 (D. Mass. 2026) ("[T]his Court likewise concludes that '§ 1252(f)(1) does not apply to vacatur.'" (quoting *Texas v. United States*, 50 F.4th 498, 528 (5th Cir. 2022))), *rev'd and remanded on other grounds sub nom.*, *Afr. Cmtys. Together v. Mullin*, --- F.4th ----, 2026 WL 2186097 (Mem) (1st Cir. July 29, 2026); *Doe*,

2026 WL 2279577, at *6 ("[T]he Court concludes that 8 U.S.C. § 1252(f)(1) does not bar the plaintiffs' claims.").

### B. Motion to Postpone

Having dismissed the only two claims on which Plaintiffs base their motion to postpone—ultra vires and procedural due process—the Court need not consider the motion and will deny it as moot.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to Counts I–IV and VI–VIII and DENIED as to Count V. Plaintiffs' motion to postpone the effective date of the termination of Ethiopia's TPS designation is DENIED as moot. In addition, the Court LIFTS the administrative stay.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated: August 18, 2026