**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AFRICAN COMMUNITIES TOGETHER; SAMUEL DOE; STEPHEN DOE; and ABAL DOE, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; and UNITED STATES OF AMERICA,<br><br>*Defendants*. | Civil Action No. 1:26-cv-10278-BEM |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF PARTIAL FINAL JUDGMENT AS TO COUNTS VI, VII, AND VIII PURSUANT RULE 54(b) AND REQUEST FOR EXPEDITED RESPONSE**

## TABLE OF CONTENTS

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

PROCEDURAL BACKGROUND ........ 2

LEGAL STANDARD ........ 4

ARGUMENT ........ 4

I. The Court Finally Adjudicated Plaintiffs' Procedural Due Process and *Ultra Vires* Claims ........ 5

II. There Is No Just Reason to Delay an Appeal of Plaintiffs' Procedural Due Process and *Ultra Vires* Claims ........ 5

A. There Is No Meaningful Overlap Between the Three Dismissed Claims and the Remaining Claim ........ 6

B. The Equities and Public Interest Weigh in Favor of Partial Judgment ........ 7

CONCLUSION ........ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afr. Cmtys. Together v. Mullin*, No. 25-CV-13939-PBS, 2026 WL 2274504 (D. Mass. Aug. 7, 2026) ..... 8

*Afr. Cmtys. Together v. Mullin*, No. 26-CV-11201-ADB, 2026 WL 2364398 (D. Mass. Aug. 14, 2026) ..... 8

*Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18 (1st Cir. 2022) ..... 4, 7, 8

*Bos. Prop. Exch. Transfer Co. v. Iantosca*, 720 F.3d 1 (1st Cir. 2013) ..... 5

*Credit Francais Int'l, S.A. v. Bio-Vita, Ltd.*, 78 F.3d 698 (1st Cir. 1996) ..... 5, 7

*Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1 (1980) ..... 5

*Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576 (1st Cir. 1994) ..... 4, 5, 6, 7

*Mullin v. Doe*, 146 S. Ct. 2121 (2026) ..... 2

*Quinn v. City of Bos.*, 325 F.3d 18 (1st Cir. 2003) ..... 7, 10

*Spiegel v. Trs. of Tufts Coll.*, 843 F.2d 38 (1st Cir. 1988) ..... 4

*United States v. Barbosa*, 896 F.3d 60 (1st Cir. 2018) ..... 9

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ..... 7

**Statutes**

5 U.S.C. § 706 ..... 5

8 U.S.C. § 1103 ..... 6

**Constitutional Provisions**

U.S. Const. amend. V ........................................................................................................ 3, 5, 7

**Rules**

Fed. R. App. P. 3 ........................................................................................................ 9

Fed. R. Civ. P. 54 ........................................................................................................ *passim*

## INTRODUCTION

In partially granting Defendants' motion to dismiss, the Court conclusively resolved Plaintiffs' procedural due process and *ultra vires* claims, while leaving room for discovery on a wholly separate equal protection claim that turns on different legal theories and substantially different factual and evidentiary questions. Absent entry of final judgment as to the decided claims pursuant to Federal Rules of Civil Procedure 54(b), the Court's partial dismissal order is non-final and cannot immediately be appealed. And although Plaintiffs otherwise could have immediately appealed this Court's denial of their postponement motion—as plaintiffs in other TPS cases in this District have recently done—that path is at a minimum unclear because this Court determined that it "need not consider" that motion and denied it as "moot" *after* dismissing Plaintiffs' procedural due process and *ultra vires* claims.

As a result, Plaintiffs now stand in a materially different position from the plaintiffs in the other TPS-termination cases pending in this District. Although those plaintiffs have initiated First Circuit appeals pressing their *ultra vires* and procedural due process claims, Plaintiffs here presently lack a clear path to do so. As a result, appellate review of this Court's adjudication of those claims could be delayed until after discovery and further proceedings on Plaintiffs' equal protection claim, a process that may take many months, if not years. By then, the First Circuit will likely have resolved the *ultra vires* and procedural due process issues, *without* the input of the individual Plaintiffs here and *without* the benefit of reviewing this Court's Order and this case's record alongside the other TPS cases. Delaying appellate review would be particularly inequitable here given the significant and ongoing consequences associated with the loss of TPS-related protections.

Rule 54(b) exists precisely for circumstances such as these. The Court's dismissal of the due process and *ultra vires* claims constitutes a final adjudication of a discrete set of claims, and

there is no just reason to delay appellate review. Indeed, allowing appellate review to proceed on a similar timeframe as the other First Circuit TPS appeals raising similar *ultra vires* and procedural due process claims would aid judicial efficiency and promote the orderly and informed resolution of recurring legal questions concerning the TPS statute. Because the requirements for Rule 54(b) certification are readily satisfied here, the Court should direct the entry of partial final judgment as to the due process and *ultra vires* claims (Counts VI, VII, and VIII) pursuant to Rule 54(b) expeditiously.

Further, because more than two weeks have elapsed since the Court's August 18, 2026 Order while Plaintiffs attempted to confer with Defendants regarding Rule 54(b) relief—and were asked to wait more than ten days before Defendants were willing to provide their position—Plaintiffs respectfully request that the Court direct Defendants to respond within seven days so that, if the Court determines that Rule 54(b) relief is warranted, it can provide meaningful relief without further delay.

## PROCEDURAL BACKGROUND

Plaintiffs commenced this action on January 22, 2026, asserting five causes of action challenging the termination of Ethiopia's Temporary Protected Status ("TPS"). ECF 1. Following the Supreme Court's decision in *Mullin v. Doe*, 146 S. Ct. 2121 (2026), Plaintiffs filed an Amended Complaint on July 13, 2026, adding two procedural due process claims (Counts VI and VII) and an *ultra vires* claim alleging that the Secretary of Homeland Security lacked statutory authority to terminate Ethiopia's TPS designation (Count VIII). ECF 71. Plaintiffs simultaneously filed a renewed motion to postpone agency action based on those claims, and the Court entered an administrative stay pending resolution of that motion. ECF 72, 82.

On July 27, 2026, Defendants moved to dismiss Plaintiffs' Amended Complaint in its entirety. ECF 85. Plaintiffs opposed the motion only as to Counts IV–VIII. ECF 100. After

briefing and a hearing, the Court issued an order on August 18, granting Defendants' motion to dismiss in part. Specifically, the Court dismissed Counts VI–VIII, which asserted the procedural due process and *ultra vires* claims that give rise to this motion. ECF 103 at 6–12. The Court also dismissed Counts I–III, which Plaintiffs did not oppose, and Count IV. *Id.* at 13–14 & n.11. The Court denied Defendants' motion as to Count V, Plaintiffs' standalone Fifth Amendment equal protection claim, which remains the sole claim in this action. *Id.* at 12–13. After addressing Defendants' motion to dismiss, the Court determined that it "need not consider" Plaintiffs' renewed postponement motion on the grounds that the motion was now "moot" after the dismissal of the procedural due process and *ultra vires* claims that had formed the basis of Plaintiffs' motion. *Id.* at 15. The Court further lifted the administrative stay and, in the docket entry accompanying the Order, directed the parties to confer and submit a joint proposed discovery and briefing schedule governing the equal protection claim. *Id.*

On August 21, just three days after the Court's ruling, Plaintiffs sought Defendants' position on a potential Rule 54(b) motion. Defendants requested additional time to consider their position and sought Plaintiffs' assent to an extension of the deadline to submit a joint discovery and briefing schedule. It was not until August 31—ten days after Plaintiffs initially sought Defendants' position on the Rule 54(b) motion—that Defendants ultimately communicated their opposition to Rule 54(b) relief.

On September 1, the Court adopted the parties' proposed discovery schedule. ECF 109. Plaintiffs are to serve initial requests for production on Defendants by September 15. Parties are to meet and confer on initial requests for production between September 15 and October 6. On October 6, the parties will initiate motions practice regarding discovery, if necessary.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(b), when an action involves multiple claims a district court may "direct entry of a final judgment as to . . . fewer than all[] claims" upon an express determination that "there is no just reason for delay." Fed. R. Civ. P. 54(b). The Rule permits a district court to enter a partial final judgment that is immediately appealable as to discrete claims, even if other claims remain pending. *Amyndas Pharms.*, *S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 28 (1st Cir. 2022). In doing so, Rule 54(b) seeks to balance "the need for the timely adjudication of important issues that arise early in a case" against the "long-settled and prudential policy against the scattershot disposition of litigation." *Id.* (quoting *Spiegel v. Trs. of Tufts Coll.*, 843 F.2d 38, 42 (1st Cir. 1988)).

The First Circuit applies a two-part framework to Rule 54(b) motions. *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 580 (1st Cir. 1994). First, the ruling underlying the proposed Rule 54(b) judgment must be "final" in the sense that it completely disposes of a distinct substantive claim or set of claims against the defendants. *Id.* Second, the court must determine that there is "no just reason for delay" in entering judgment. *Spiegel*, 843 F.2d at 43. In evaluating that question, courts consider, among other things, the relationship between the resolved and unresolved claims and the equities implicated by immediate appeal of the resolved claims. *Amyndas*, 48 F.4th at 28–29; *see also Maldonado-Denis*, 23 F.3d at 580.

## ARGUMENT

Plaintiffs respectfully submit that the Court should enter partial final judgment as to the procedural due process claims and the *ultra vires* claims because both requirements for Rule 54(b) are easily satisfied. *First*, the Court's August 18 Order finally and completely resolved these claims, leaving nothing further for the Court to adjudicate with respect to them. *Second*, there is no just reason to delay appellate review. These dismissed claims are legally and factually distinct

from the sole remaining equal protection claim, and both the equities and public interest strongly favor prompt appellate review.

## I. The Court Finally Adjudicated Plaintiffs' Procedural Due Process and *Ultra Vires* Claims

The Court's August 18, 2026 Order dismissing the procedural due process and *ultra vires* claims clearly satisfies Rule 54(b)'s finality requirement. A decision is final for Rule 54(b) purposes when it disposes "of some discrete substantive claim or set of claims." *Maldonado-Denis*, 23 F.3d at 580. Put differently, the order must constitute the court's "ultimate disposition" of an individual claim entered in the course of a multiple claims action. *Bos. Prop. Exch. Transfer Co. v. Iantosca*, 720 F.3d 1, 7 (1st Cir. 2013) (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980)).

The August 18 Order readily satisfies that standard. The due process and *ultra vires* claims each asserted a distinct, cognizable claim for relief: Count VI alleged a procedural due process violation under 5 U.S.C. § 706(2)(B); Count VII alleged a procedural due process violation under the Due Process Clause of the Fifth Amendment; and Count VIII alleged an *ultra vires* claim under 5 U.S.C. § 706(2)(C). By dismissing those counts in their entirety, the Court conclusively resolved Plaintiffs' procedural due process and *ultra vires* claims and left nothing further to adjudicate with respect to them. *See Boston Prop. Exch. Transfer Co.*, 720 F.3d at 7–8.

## II. There Is No Just Reason to Delay an Appeal of Plaintiffs' Procedural Due Process and *Ultra Vires* Claims

Because the finality requirement is satisfied, the remaining question is whether there is any "just reason for delay." Fed. R. Civ. P. 54(b). In making that determination, courts undertake an individualized assessment of "(1) any interrelationship or overlap among the various legal and factual issues involved in the dismissed and the pending claims, and (2) any equities and efficiencies implicated by the requested piecemeal review." *Credit Francais Int'l, S.A. v. Bio-*

*Vita, Ltd.*, 78 F.3d 698, 706 (1st Cir. 1996). Both considerations overwhelmingly favor entry of partial judgment here.

**A. There Is No Meaningful Overlap Between the Three Dismissed Claims and the Remaining Claim**

There is minimal overlap between Plaintiffs' dismissed procedural due process and *ultra vires* claims and the remaining equal protection claim. Examining this question "requires tracing the interrelationship between, on one hand, the legal and factual basis of the claims undergirding the proposed judgment (*i.e.*, the jettisoned claims), and on the other hand, the legal and factual basis of the claims remaining in the case." *Maldonado-Denis*, 23 F.3d at 580.

The dismissed claims and the remaining equal protection claim rest on materially different legal theories and distinct factual and evidentiary inquiries. The due process claims allege constitutionally deficient procedures in the manner in which Defendants terminated Ethiopia's TPS designation. Those claims focus on whether Plaintiffs possessed a protected liberty or property interest, whether the TPS statute's procedures were constitutionally required, and whether the process employed by Defendants satisfied due process requirements. ECF 71 ¶¶ 240–64. The *ultra vires* claim, in turn, presents a pure question of statutory interpretation: whether under 8 U.S.C. § 1103(a) Congress transferred TPS termination authority from the Attorney General to the Secretary of Homeland Security. ECF 71 ¶¶ 265–86. The Court dismissed those claims by reasoning that the TPS termination was akin to a generally applicable governmental action that did not trigger the procedural due process protections Plaintiffs asserted and that section 1103(a) conferred authority to terminate TPS designations on the Secretary. ECF 103 at 6–9, 10–12.

By contrast, the equal protection claim—the sole remaining claim—alleges that Ethiopia's TPS termination discriminates against Plaintiffs because of their race or national origin in violation of the Fifth Amendment's Equal Protection Clause. ECF 71 ¶¶ 234–39. The Court denied

Defendants' motion to dismiss that claim because Plaintiffs plausibly alleged discriminatory intent and are entitled to pursue their claim through discovery. ECF 103 at 12–14. Resolution of the equal protection claim will turn on evidence concerning governmental intent, discriminatory purpose, and the factual considerations identified in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). ECF 103 at 12–14. The equal protection claim therefore requires a substantially different evidentiary record and addresses a distinct constitutional question from those presented by the dismissed due process and *ultra vires* claims.

Courts often enter Rule 54(b) partial judgments where, as here, the dismissed claims are legally distinct from and share minimal factual overlap with the claims that remain pending. *See, e.g.*, *Quinn v. City of Bos.*, 325 F.3d 18, 27–29 (1st Cir. 2003) (affirming Rule 54(b) certification where the dismissed and remaining claim rested on "separate and distinct" legal issues and "materially different" proof, such that there would be "no significant duplication of effort"); *Amyndas*, 48 F.4th at 29 (affirming Rule 54(b) certification because "the issues on appeal are . . . distinct from the merits of the claims remaining"); *Maldonado-Denis*, 23 F.3d at 580 (determining Rule 54(b) judgment appropriate in part because "those claims raised a set of unique issues" from remaining claims).

**B. The Equities and Public Interest Weigh in Favor of Partial Judgment**

The "equities and efficiencies" here also favor immediate appellate review of Plaintiffs' procedural due process and *ultra vires* claims. *Credit Francais Int'l*, 78 F.3d at 706.

*First*, absent Rule 54(b) relief, there is no clear path to immediate appellate review, and that appellate review of the dismissed claims is unlikely to occur for a substantial period of time. The remaining equal protection claim will likely require extensive fact discovery concerning governmental motive under *Arlington Heights*. The Court recently adopted a discovery schedule under which Plaintiffs' request for production will commence in the coming weeks, with motions

practice regarding any discovery disputes beginning in October 2026. ECF 109. Only after the completion of discovery and related briefing will the parties be in a position to move for summary judgment, after which the Court will need to resolve those motions and, if necessary, conduct trial and any post-trial proceedings. As a practical matter, the discovery phase alone is likely to take months, and it will certainly be considerably longer before a final judgment as to the equal protection claim is entered and appellate review becomes available. The equities therefore must be assessed against the backdrop of a potentially lengthy delay in obtaining review of the procedural due process and *ultra vires* claims.

*Second,* the "nature of the rights at issue" also counsels strongly in favor of Rule 54(b) relief. *Amyndas*, 48 F.4th at 29 (noting that the nature of the relevant legal rights should guide Rule 54(b) analysis). Here, the dismissed claims concern the loss of TPS-related protections, including authorization to work in the United States and protection from removal. As alleged in the Amended Complaint, the termination of Ethiopia's TPS designation affects more than 5,000 TPS holders and hundreds of applicants who have lost work authorization, driver's licenses, and other collateral benefits; are subject to removal proceedings; and are experiencing disruption of family relationships. ECF 71 ¶¶ 174–95. They also face the possibility of removal to a country that this Court has recognized continues to be plagued by, among other things, "armed conflict and natural disasters." ECF 56 at 23. The record before the Court underscores the practical significance of the legal questions resolved in the due process and *ultra vires* claims.

*Third*, delaying appellate review would be particularly unfair to the individual Plaintiffs here because the very same claims were recently adjudicated by other courts within this District, and have recently been appealed to the First Circuit. *See Afr. Cmtys. Together v. Mullin*, No. 25-CV-13939-PBS, 2026 WL 2274504 (D. Mass. Aug. 7, 2026), *appeal docketed* No. 26-1898; *Afr.*

*Cmtys. Together v. Mullin*, No. 26-CV-11201-ADB, 2026 WL 2364398 (D. Mass. Aug. 14, 2026) *appeal docketed* No. 26-1930. The individual Plaintiffs here face the prospect that the First Circuit will receive briefing, hear argument, and resolve these legal questions in other cases before Plaintiffs have any opportunity to obtain appellate review of their own dismissed claims. As a result, these Plaintiffs would effectively be deprived of a meaningful opportunity to participate in the resolution of legal questions that directly affect their rights and interests, even though they are distinct parties with distinct claims. *See United States v. Barbosa*, 896 F.3d 60, 74 (1st Cir. 2018) (recognizing that subsequent panels are "bound by prior panel decisions closely on point"). Although there is overlap in the counsel across the TPS cases and the same organizational plaintiff is a party in each case, the individual plaintiffs in the several cases are different and Plaintiffs are entitled to present their own arguments—based on the record they developed in *this* case and in support of an appeal of *this* Court's order—concerning the procedural protections owed to TPS beneficiaries and the DHS Secretary's authority to terminate TPS designations.

*Fourth*, immediate appellate review of the procedural due process and *ultra vires* claims will not prejudice Defendants. Because appeals presenting substantially similar questions are already pending before the First Circuit, Defendants will be required to brief these issues regardless. Moreover, if Defendants believe coordinated treatment of the appeals would conserve resources, they may move to consolidate the appeals, seek to file a combined response brief, or pursue other case-management measures that would permit the issues to be addressed efficiently in a single proceeding. *See* Fed. R. App. P. 3(b)(2) (authorizing consolidation of appeals).

*Fifth*, immediate appellate review will advance the interests of justice and promote the orderly resolution of these recurring legal questions by allowing the First Circuit to consider the pending TPS appeals on a similar timeframe. Although the district court decisions in these related

cases address overlapping legal issues, the reasoning adopted by the respective courts was not identical, nor did the briefing advance the same set of arguments and authorities. Appellate review of all related cases within the same timeframe will provide the First Circuit with the fullest opportunity to consider the range of arguments and analyses presented below, thereby promoting the consistent and informed resolution of significant questions concerning the constitutional protections available to TPS beneficiaries and the TPS statute. Under these circumstances, equitable and efficiency considerations weigh strongly in favor of permitting Plaintiffs to pursue immediate review alongside the parties in the other TPS appeals rather than requiring them to wait until after the conclusion of proceedings on an entirely different claim.

*Finally*, the public interest favors immediate review. The procedural due process and *ultra vires* claims present significant questions that affect not only the named Plaintiffs, but also thousands of TPS beneficiaries and the administration of the federal TPS program more generally. *See Quinn*, 325 F.3d at 27 (finding public interest weighs in favor of review where resolution of the claims will have a "broad impact"). That similar issues have arisen in TPS-termination litigation pending in this District and across the Nation underscores that they are recurring questions rather than case-specific disputes.

**CONCLUSION**

For the above reasons, this Court should grant Plaintiffs' Motion for Entry of Partial Final Judgment as to the due process claims (Counts VI and VII), and the *ultra vires* claim (Count VIII) pursuant to Federal Rule of Civil Procedure 54(b). Plaintiffs also respectfully request that the Court direct Defendants to respond within seven days so that, if the Court determines that Rule 54(b) relief is warranted, it can provide meaningful relief without further delay.

Dated: September 3, 2026

Respectfully Submitted,

*/s/ Paul Killebrew*
Mark H. Lynch (*pro hac vice*)
Stephen Petkis (*pro hac vice*)
Daniel G. Randolph (*pro hac vice*)
Paul Killebrew (*pro hac vice*)
Ayana M. Lindsey (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001
(202) 662-6000
MLynch@cov.com
SPetkis@cov.com
DRandolph@cov.com
PKillebrew@cov.com
ALindsey@cov.com

*/s/ Joy Chen*
Joy Chen (BBO No. 714192)
COVINGTON & BURLING LLP
One International Place
Suite 1020
Boston, MA 02110-2627
(617) 603-8821
JChen@cov.com

*/s/ Sarah Leadem*
Sarah Leadem (*pro hac vice*)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
SLeadem@cov.com

*/s/ Nargis Aslami*
Nargis Aslami (BBO No. 714848)
Melissa Keaney (*pro hac vice*)
Collin Poirot (*pro hac vice*)
Abbey Rutherford (*pro hac vice*)
MUSLIM ADVOCATES
1032 15th Street N.W. #362
Washington, D.C. 20005
(202) 897-2622
Nargis@muslimadvocates.org
Melissa@muslimadvocates.org
Collin@muslimadvocates.org
Abbey@muslimadvocates.org

*/s/ Eric Crew*
Erik Crew (*pro hac vice*)
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
(949) 603-7411
ecrew@haitianbridge.org

*Counsel for Plaintiffs African Communities Together, Samuel Doe, Stephen Doe, Abal Doe, and the Proposed Class*

**CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Paul Killebrew*
Paul Killebrew